Shannon *v.* Boggs & Buhl, Appellant.

Argued April 17, 1936.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Coleman Harrison,* for appellant.

*John R. Bredin,* with him *Dalzell, McFall & Pringle,*
for appellee.

OPINION BY CUNNINGHAM, J., October 9, 1936:

This action involves a claim by the plaintiff grow-
ing out of alleged defects in a bed delivered to him by
the defendant under a bailment lease. The lease,
typical in form and containing an option to purchase
at the end of the term for one dollar, was executed on
March 3, 1930. It recited that defendant leased to
plaintiff a number of items of household furniture, of
a total value of $1,061.25. Among these items was "1
bedroom suite—$395.00". Plaintiff made a down pay-
ment of $162.75 at the time the contract was executed,
and agreed to pay thereafter $89.85 each month until
the total sum stipulated should have been paid.

From the evidence, it appears that the furniture was delivered to plaintiff in January, 1930, before the lease was actually signed. Shortly after it was received, plaintiff made complaint of the condition of the bed, which was one of the three items making up the bedroom suite. He testified the bed was not stable, squeaked, and when used in any way did not stand solidly on the floor; that he demanded it either be replaced or put in first-class condition; and that as a result of his complaints defendant sent out a number of repairmen over a period of nine or ten months in an attempt to remedy the condition. From time to time slats were replaced, cardboard was wedged between the side boards of the bed and the ends of the slats, and a wire brace was attached, extending from each leg of the bed to a central turnbuckle. These various adjustments, however, did not—according to plaintiff—put the bed in sound condition.

In addition to the down payment of $162.75, plaintiff paid the sum of $89.85 a month for the three months of March, April and May, 1930, or a total of $432.30. In December, 1930, defendant insisted that the intervening and overdue installments be paid up. Plaintiff thereupon offered to return the bed or the bedroom suite and to continue payments upon the balance of the furniture. Defendant refused this proposal and in February, 1931, obtained possession of all the furniture by an action in replevin, to which plaintiff made no defense.

Thereafter plaintiff instituted the present action in trespass. In his original statement of claim he averred there was a breach of warranty as to the bed; that he had made an offer to pay in full providing the bed were properly fixed or replaced, or, in the alternative, to make full payment except for the bedroom suite; that defendant refused both offers, and under a writ of replevin repossessed itself of the furniture; and that

the seizure of the goods under the circumstances was an abuse of legal process, for which he was entitled to damages. Defendant filed an affidavit of defense raising questions of law. Plaintiff then amended the statement of claim and asked not only for punitive damages for abuse of process, but also for the sum of $432.30 (the exact amount of the payments made by him) as damages for breach of warranty. Defendant filed another statutory demurrer which was overruled but the claim for punitive damages was eliminated. No further affidavit of defense was filed.

The result of the several amendments seems to have been that a case which started out as an action of trespass to recover damages for an abuse of legal process by the defendant ended up with the trial judge telling the jury at the beginning of his charge that the plaintiff was "seeking to recover from the defendant an amount of money" which he had paid "on account of a contract under which he purchased" certain articles of furniture, the ground upon which recovery was sought being that a bed "was not up to the implied warranty that it should be reasonably fit for use."

Another element injected into the case was that of an alleged rescission of the contract. In his charge to the jury, the trial judge instructed them that plaintiff was seeking to recover the money paid by him on account of the contract upon the theory that the contract had been rescinded. After reciting the facts, he said: "One question of fact which you will have to decide is whether or not Mr. Shannon did, as he says, rescind his contract, refuse to continue further with the contract, offered the goods back to them, told them he would not pay for it or would only pay for a part of it, and try to make a new deal with them." However, after making this preliminary statement the trial judge seemed to assume in the remainder of his charge that there had been a rescission. He did not define to

the jury the elements necessary to constitute a res-
cission, but immediately thereafter charged: "The ques-
tion is whether within a reasonable time after these
goods were received, which, according to some of the
evidence, was before March 3, 1930, he rescinded the
contract as he said he did, ...... From it all you will
determine whether any just complaint was made about
the condition of the bed and whether the final ulti-
matum that he said he gave them was made within a
reasonable time after he came into possession of the
goods." He then charged that the jury should also
find whether the bed was reasonably fit for the use to
which it was intended to be put, saying in conclusion,
"Unless you are so satisfied by the weight of the testi-
mony that it was not reasonably fit for use, the verdict
ought to be for the defendant. In addition to that, un-
less you are also satisfied by the fair weight of the testi-
mony that the ultimatum that was finally given was
given within a reasonable time after the furniture was
delivered to this man, your verdict should be for the
defendant. It should be for the plaintiff only if you
find both these issues in favor of the plaintiff on the
preponderance of the evidence. ...... The whole ques-
tion here is just what I have stated, whether this plain-
tiff made his ultimatum within a reasonable time after
he accepted the goods and whether the goods were
reasonably fit."

As to the measure of damages, the jurors were in-
structed that if they found for plaintiff on both these
issues, he was entitled to recover back the money he
had paid with interest, less a reasonable allowance
for the use and depreciation of the furniture. The
amount of that allowance was left to the jury's discre-
tion.

The jury returned a verdict for $432.30, the exact
amount of the payments. Upon defendant's motions
for judgment n. o. v. or a new trial, the court, in banc,

denied the former but came to the conclusion that the verdict was too high and reduced it by the amount of $125 "to make a proper allowance to defendant for the use of the goods." How the amount of the reduction was arrived at was not stated. Judgment was entered upon the verdict as so reduced to $307.30 and the defendant has appealed.

Three contentions are presented by the appellant:

(1) The case was submitted to the jury under an improper and illegal measure of plaintiff's alleged damages.

(2) The bailment lease by its terms prevented plaintiff from recovering any amounts which he had paid to defendant.

(3) There was no evidence of a legal rescission which would warrant submission of the case to the jury.

It is obvious from the above statement of facts that this case was not presented upon a consistent theory. The original claim of abuse of legal process was abandoned at the trial. This left open plaintiff's claim for breach of warranty. The case as actually presented to the jury was based upon the theory of rescission, although the charge was such as to suggest to the jury that plaintiff had rescinded the contract if his offer to return was made within a reasonable time.

Aside from the irregularities and anomalies to which we have referred, we are of opinion that the case must be retried because the measure of damages given the jury was incorrect under any possible theory of the case.

The sum of $432.30 was paid by plaintiff under the contract as *rent* for all the articles leased. If plaintiff's claim is one for breach of warranty, then under well-established principles his damages for defects in the bed would be the difference between the rental value of the bed according to the contract and its rental value in its defective condition. If we assume that the

bed was an integral part of the bedroom suite and should not be considered apart therefrom (which we think would be reasonable), then the proper measure of damages would be the difference between the rental paid for the suite and its rental value in its defective state. Under the terms of the bailment, the rental paid, and to be paid, for the bedroom suite was less than one half of the total rental for all the property covered by the contract. The extent of this difference would be a question for the jury to determine under all the evidence. Obviously, however, it could not be the *total* rental paid by plaintiff not only for the bedroom suite but for all the articles of furniture covered by the lease. Even under the most extreme inference possible from the evidence—that the whole suite was rendered valueless—the damage could not exceed the proportion which the rental value of the suite bore to the total rent.

If, on the other hand, recovery is to be based upon a rescission of the contract, here again plaintiff would not be entitled to the total payments made. Plaintiff does not claim that he offered to return all of the articles leased, but only the bed or in the alternative the bedroom suite. If the contract was apportionable, plaintiff had the right to make a partial rescission, and the separate itemization and valuation of the various articles leased, including the bedroom suite, suggest that apportionment would be proper. If plaintiff was entitled to return the bedroom suite alone, upon the theory of rescission, he was not entitled to receive back from defendant the *whole* of the payments made, but only that proportion of the payments which $395 (the price of the suite) bears to $1,061.25 (the price of all the goods). A claim for the return of $432.30 could be justified only upon the theory of total rescission—a theory which is not supported by the evidence or apparently even advanced by plaintiff. The judgment

must, therefore, be reversed and the case remanded for a new trial.

With respect to the motion for judgment n. o. v., we do not agree with appellant. It is true that the lease states in part that any money paid to the bailor prior to repossession shall be retained by it "as rent and hire for the use of said goods, without abatement or reduction." This is an agreement which the parties had the right to make; it would be applicable in a case where the question was simply one of repossession for default in rental payments. In effect it means that the lessor may repossess the goods upon default in rent, without giving credit for payments already made. It obviously was not intended, and should not be construed, to deprive the lessee of any claims for breach of warranty, if those claims are otherwise valid.

Nor do we deem it necessary to consider whether there was sufficient evidence of rescission to warrant submission of the case to the jury upon that theory. Even though the evidence as to rescission were insufficient, there was evidence of a breach of warranty which, if submitted under proper instructions and believed by the jury, would have supported a verdict. The evidence of the plaintiff also indicates that complaints were made with reference to the alleged breach very shortly after the bed was received and were repeated from time to time. Since the case must go back for a new trial, it is unnecessary for us to analyze the evidence applicable to the theory of rescission as such, rather than to the theory of a breach of warranty. Plaintiff's statement of claim was based apparently upon the latter theory, and we find no conclusive evidence that he abandoned this theory at the trial.

We suggest, in any event, for the guidance of the parties, that when this case is again tried it be tried consistently either on the theory of rescission or upon that of breach of warranty, since the measure of dam-

ages will not necessarily be the same; and we further suggest that should the theory adopted be that of rescission, its essential elements be clearly defined to the jury.

Judgment reversed with a venire.