Nolan, Appellant, *v.* Tifereth Israel Synagogue.

Argued November 17, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Peter Krehel,* with him *W. J. Krencewicz,* for appellant.

*Louis Cohen,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 21, 1967:

On March 9, 1963, Gertrude T. Nolan, wife appellant, fell on the sidewalk in front of appellee's Synagogue building. The fall resulted in personal injuries

of various kinds, including an alleged permanent partial disability of wife appellant's right hand and arm. To recover damages stemming from the alleged fall, husband and wife appellants filed an action of trespass against appellee, alleging that the fall was occasioned by appellee's negligence in failing to maintain the sidewalk in proper repair.

Appellee filed preliminary objections in the nature of a demurrer to appellants' complaint, averring that the complaint lacked sufficiency in stating a cause of action; that the complaint did not constitute a legal claim, and raising the defense of charitable immunity. The court below sustained the demurrer on the sole ground that appellee, being a nonprofit religious organization, was immune from tort liability under the doctrine of immunity of charitable organizations from such liability. The court, however, granted leave to appellants to amend the complaint to cure the defect, if possible. Appellants filed an amended complaint which, while different from the original complaint, made no essential change in the cause of action pleaded. Appellee once again filed preliminary objections in the nature of a demurrer, again raising the issues raised in the preliminary objections to the original complaint.

The second preliminary objections were filed on March 18, 1965, and the court below, on September 27, 1965, sustained the preliminary objections and entered judgment for appellee, again on the sole ground that the doctrine of charitable immunity applied. In the interim, on March 22, 1965, this court filed its decision in *Flagiello v. Pa. Hosp.,* 417 Pa. 486, 208 A. 2d 193 (1965).

The opinion of the court below concludes that our decision in *Flagiello* abrogated the doctrine of charitable immunity only insofar as it related to an action of trespass brought by a paying patient in a hospital.

This position is also taken by appellee in this appeal.[1] Appellants, on the other hand, contend that *Flagiello* intended to, and did, put an end to the doctrine of charitable immunity in Pennsylvania.

*Flagiello*, of course, dealt specifically with personal injuries suffered by a paying patient in a hospital, and specifically overruled *Michael v. Hahnemann*, 404 Pa. 424, 172 A. 2d 769 (1961) : ". . . and all other decisions of identical effect." In concluding the opinion of the court, Mr. Justice MUSMANNO, speaking for the court, said that we: ". . . hold that the hospital's liability must be governed by the same principles of law as apply to other employers."

The decision of this court in *Flagiello* considered, at great length, the doctrine of stare decisis and the bases upon which established legal principles may be changed. We there said: ". . . that where justice demands, reason dictates, equality enjoins and fair play decrees a change in judge-made law, courts will not lack in determination to establish that change." In that opinion, justification for a change in the rule was amply supplied, and no reiteration of that reasoning or the legal precedents relied upon is required here.

Mr. Justice ROBERTS, in his concurring opinion in *Flagiello*, aptly concluded: "I do not believe that we must in any way 'penalize' charities for their mistakes. What I do believe is that, in the proven absence of persuasiveness in any of the arguments advanced for maintaining a rule of law which makes negligent injury suffered at the hands of charitable institutions noncompensable, such institutions should be held to the same responsibility as any other entity. . . . Personal injury is no less painful, disabling, costly or damage-producing simply because negligent harm is inflicted

---

[1] *Siewicz v. Wyoming Valley Hospital*, 417 Pa. 533, 208 A. 2d 288, handed down the same day as *Flagiello* extended its rule to a nonpaying patient.

in or by a charitable institution rather than a non-charitable one."

To hold that *Flagiello* is limited to the extent found by the court below and contended for by appellee would produce an anomalous situation bordering on the bizarre. We would then be required to say that a paying patient in a hospital could recover for injuries sustained by him as the result of the hospital's negligence, while a non-paying patient could make no such recovery. We would further be required to say that of all of the charitable institutions in the Commonwealth formerly beneficiaries of the doctrine of charitable immunity, only hospitals had lost the protection and all other charitable institutions retained it. Or, we might be required to say that payment of a fee for service is the criterion upon which a determination of who may recover against a charitable institution in tort is based, if indeed the decision in *Flagiello* is dependent on the circumstance of the plaintiff's having been a paying patient. Were such a conclusion reached, we might be required to hold that in cases such as the one at bar involving a religious institution, that a dues-paying member of the congregation could recover while another person not so situated could not, if indeed the organization were set up on the basis of fixed membership dues, as many religious organizations are.

We cannot conclude that our decision in *Flagiello* did nothing more than remove the protection of the doctrine from hospitals involved in tort litigation with paying patients, and therefore, lest the fact that such a situation was involved in *Flagiello* remain as a source of confusion, we here hold unequivocally that the doctrine of immunity of charitable institutions from liability in tort no longer exists in the Commonwealth of Pennsylvania.[2]

---

[2] The Supreme Court of Idaho, in an opinion filed December 18, 1966, did away with the doctrine of charitable immunities en-

The judgment of the court below is reversed, and the cause remanded for further proceedings consistent herewith.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

In *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A. 2d 193, a majority of this Court overruled the law which had been iterated and reiterated by this Court many, many times for approximately 75 years. In spite of all our prior cases, the present majority abolished in *Flagiello* (the defense of) charitable immunity and decided that the charitable immunity principle should no longer apply in a trespass suit *by paying-patients against a hospital.* In the *Flagiello* case, I filed a very strong dissenting Opinion in which I pointed out the tragic consequences which would result from the majority Opinion, even though it was restricted to a paying hospital patient. Moreover, in that Opinion, I predicted the future course of the present Supreme Court in the field of charitable immunity. I pertinently said (page 519): "(1) Hospitals and public charities are, *next to the Church,** the greatest benefactors known to mankind. They are in reality a Trust for Humanity. The majority Opinion would bring so much harm to nonprofit hospitals and so greatly increase hospital expenses, and likewise the already colossal cost to patients, as to (a) harm all patients for the benefit of an injured few, and (b) jeopardize the existence of a number of hospitals, or (c) require them to reduce or greatly curtail or eliminate a number of their essential services and their functions, facilities, research and other activities and benevolences. . . .

---

tirely in the State of Idaho. That State had previously done away with the doctrine, in so far as it applied to paying patients in hospitals. See *Bell v. The Presbytery of Boise,* 35 Law Week 2417.

* Italics throughout, ours.

"(2) By eliminating charitable immunity for nonprofit, charitable hospitals, *the majority Opinion likewise abolishes it for Churches,* schools and universities, *homes for the blind, homes for the aged, homes for crippled or retarded or homeless children, . . . and five other Catholic child-care institutions* in Philadelphia, *convents,* religious organizations of many denominations, the Salvation Army, the Y.M.C.A., and in short for every other charity—small as well as large—and will undoubtedly jeopardize, especially in small communities, the very existence of many of them which today, in spite of State and City aid and large charitable gifts, are barely able to make both ends meet.

"(3) The majority Opinion places the interests of a few individuals above the vital interests of the needy and ill public.

"(4) The majority Opinion changes, without any legal or even social justification and with tremendous resulting harm to the public, the public policy of this Commonwealth which has existed for three-quarters of a century and which has been repeatedly and recently reiterated by our Courts: (citing cases).

"Moreover, for approximately 70 years, in nearly every Session of the Legislature, attempts have been made to abolish charitable immunity but the Legislature has always refused to make any change or modification in this wise and long established socially benevolent public policy."

Unfortunately, my prediction has become a reality. In the light of the enormous and sometimes fantastic verdicts which are rendered by juries today in personal injury cases, *one case for personal injuries*—just *one* case—could, as a result of the majority Opinion, literally and for all practical purposes ruin any and every Church and nearly every home for the aged, or the blind, or the homeless, and many other charitable organizations.

For these reasons, I vehemently dissent.