Daniel E. Fitzpatrick, J.
 

 In an action to recover damages for injuries suffered because of the alleged negligence and breach of warranty by defendants, defendant National Blood Bank, Inc. moves for summary judgment and defendant InterFaith Hospital of Queens (Hospital) moves pursuant to CPLR 3211 (subd. [a], par. 7) to dismiss the second cause of action for breach of warranty.
 

 
 *734
 
 During the latter part of May and the early part of June, 1965, plaintiff was a patient in defendant hospital. While there, plaintiff received blood transfusions, bearing lot numbers 72032 and Y6858, and thereafter became afflicted with hepatitis allegedly caused by said transfusions. It is further alleged that these particular lots of blood were purchased by the hospital from defendant National Blood Bank, Inc. Plaintiff now seeks to recover damages against both defendants on the theory of negligence and of breach of implied and express warranty.
 

 In regard to the motion by defendant hospital, the law in New York is that hospitals are not liable for breach of implied or express warranties of fitness and merchantability where a patient becomes afflicted with serum hepatitis as a result of a transfusion of ‘ ‘ bad ’ ’ blood.
 
 (Perlmutter
 
 v.
 
 Beth David Hosp.,
 
 308 N. Y. 100;
 
 Payton
 
 v.
 
 Brooklyn Hosp.,
 
 21 A D 2d 898, affd. 19 N Y 2d 610.) In
 
 Perlmutter,
 
 the Court of Appeals denied recovery for breach of implied warranty, holding that the transfusion of blood by a hospital to a patient constituted a ‘ ‘ service ’ ’ rather than a sale of goods and that warranties are limited to sales of goods and did not attach to performance of a service. (See, also,
 
 Aegis Prods.
 
 v.
 
 Arriflex Corp. of Amer.,
 
 25 A D 2d 639.) The Court of Appeals in affirming
 
 Payton,
 
 has applied the same reasoning to the denial of recovery based upon breach of express warranty. (Contra:
 
 Napoli
 
 v.
 
 St. Peter’s Hosp.,
 
 213 N. Y. S. 2d 6.)
 

 Concerning the motion by defendant National Blood Bank, Inc. for summary ¡judgment, although on such a motion the court does not test the* sufficiency of the complaint, it does look at all proof offered to determine whether the causes of action have merit. (CPLR 3212, subd. [b].) Although defendant blood bank would be liable for negligence if proven, there is a question whether said defendant can be held liable for breach of implied or express warranty.
 

 The issue to be determined, therefore, is whether a commercial blood bank is liable for breach of warranty where it has transferred blood to a hospital for consideration and where that blood is later used in a transfusion and causes the patient to be afflicted with serum hepatitis.
 

 In
 
 Krom
 
 v.
 
 Sharp & Dohme
 
 (7 A D 2d 761, rearg. den. 14 A D 2d 458) plaintiff brought an action against a blood bank for breach of warranty alleging that the hospital in making the purchase from defendant, did so as the patient’s agent. The court determined that the hospital was not acting as plaintiff’s agent in the purchase of the blood and that no cause of action for breach of warranty existed between the parties. In the
 
 *735
 
 more recent case of
 
 Heitner
 
 v.
 
 City of New York
 
 (N.Y.L.J., July 9, 1968, p. 12, col. 2) where the plaintiff brought an action for breach of warranty against a commercial blood bank, the court dismissed the complaint stating that
 
 Krom
 
 extended the rule in
 
 Perlmutter
 
 to commercial suppliers to the effect that supplying of blood as part of treatment was not a “ sale ”. The court held that even if there was a distinction between a hospital and commercial blood bank, the complaint must be dismissed since there exists no means of detecting the presence of injury causing factors contained in blood and thus plaintiff’s claim is incapable of proof. The decision in
 
 Heitner
 
 fails to take into account that liability in warranty does not depend upon proof of negligence and lack of knowledge of the defect or how to discover it is irrelevant.
 
 (Blessington
 
 v.
 
 McCrory Stores
 
 Corp., 305 N. Y. 140;
 
 Foley
 
 v.
 
 Liggett & Meyers Tobacco Co.,
 
 136 Misc. 468, affd. 232 App. Div. 822 ; 2 Frumer & Freeman, Products Liability, §§ 16.01[1], 19.01[3].) Furthermore, this court "does not agree that
 
 Krom
 
 extended the rule of
 
 Perlmutter,
 
 but is'of the opinion that it held that the hospital was not the patient’s agent so that he might sue for breach of warranty. It is this court’s belief that even if
 
 Krom
 
 did extend the
 
 Perl-mutter
 
 rule, it would be incorrect. The basis of the
 
 Perlmutter
 
 decision was that the supplying of blood by a hospital to a patient is incidental to the services rendered and is not a sale. In the instant situation, we have solely a transfer of blood and no services are rendered by the blood bank to the hospital.
 

 There thus seems to be no New York authority on this precise issue and the court must look to the decisions in other jurisdictions. In
 
 Balkowitsch
 
 v.
 
 Minneapolis War Mem. Blood Bank
 
 (270 Minn. 151), the court held that the transaction between a non-commercial blood bank and a hospital was not a sale. That decision, however, was based on the reasoning that a nonprofit ' corporation should be treated no differently than a hospital and should not be characterized as a commercial business which offers its products for sale in the market. (See, also,
 
 Whitehurst
 
 v.
 
 American Nat. Red Cross,
 
 1 Ariz. App. 326.)
 

 In Florida, the courts have followed
 
 Perlmutter
 
 and have held that the supply of blood by a hospital to a patient constitutes a service rather than a sale.
 
 (White
 
 v.
 
 Sarasota County Public Hosp. Bd.,
 
 206 So. 2d 19 [Fla.], cert. den. 211 So. 2d 215.) They have also held that where a commercial blood bank has supplied blood to a patient for a consideration, it has made a “ sale ”, and there may be a cause of action against it for breach of warranty.
 
 (Russell
 
 v.
 
 Community Blood Bank,
 
 196 So. 2d 115 [Fla.].)
 

 
 *736
 
 In the recent New Jersey case of
 
 Jackson
 
 v.
 
 Muhlenberg Hosp.
 
 (53 N. J. 138) the Supreme Court of New Jersey deemed the issue of whether a cause of action for breach of warranty exists against commercial blood banks to be of the utmost importance involving highly significant policy considerations. The court set aside the partial summary judgment granted by the lower court dismissing the cause of action for breach of warranty and strict liability and decided that the matter should proceed to trial where “ a complete record should be made, including not only detailed testimony as to the nature of the defendants’ operations, but also expert testimony as to the availability of any tests to ascertain the presence of viral hepatitis in blood, the respective incidences of hepatitis in blood received from commercial blood banks and other sources, and such other available testimony and materials as may be relevant to any of the questions presented by the parties, including such economic and othev factors as may bear on the question of whether the doctrnuJ of implied warranty or strict liability should apply to deliveries and transfusions of blood.” /
 

 It seems to this court in accord with the New Jersey and Florida decisions that the supplying of blood by a blood bank to a hospital is a sale. This is not a service-dominated area as was the situation in
 
 Perlmutter,
 
 but is a strict purchase and sale of blood. Subdivision (1) of section 2-106 of the Uniform Commercial Code provides that a sale consists in the passing of title from the seller to the buyer for a price. This is the exact situation that is present here.
 

 In regard to warranties subdivision (1) of section 2-314 of the Uniform Commercial Code provides that unless “ excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind ’ ’. A blood bank is clearly a merchant with respect to goods of that kind and it appears that under the Uniform Commercial Code, this implied warranty of merchantability attaches to the sale of blood. The cod,e goes on to provide that in order to be merchantable, the goods must be at least such as are fit for the ordinary purposes for which such goods are used. (Uniform Commercial Code, § 2-314, subd. [2], par. [c].) If in fact the blood sold by the blood bank contains serum hepatitis and causes injury, it is not fit for the ordinary purpose for which it is used and would in turn give rise to a claim for breach of warranty.
 

 An obstacle to a suit by the patient against the blood bank, being the necessity of privity, has been removed by the Court of Appeals in
 
 Goldberg
 
 v.
 
 Kollsman Instrument Corp.
 
 (12 N Y
 
 *737
 
 2d 432). That case concerned an action by a passenger for breach of warranty against the manufacturer of an altimeter and the manufacturer of an airplane to recover for injuries suffered in an airplane crash. The court stated (p. 436): “ A breach of warranty it is now clear, is not only a violation of the sales contract out of which the warranty arises but is a tortious wrong suable by a noncontracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer.” The court held that adequate protection is provided the passenger by casting liability upon the airplane manufacturer, but that it was not necessary to extend the rule as to hold liable the manufacturer of the component part. In the case at bar, the plaintiff, the noncontracting party, is obviously one whose use of the blood is within the reasonable contemplation of the vendor blood bank, and thus should be able to bring an action for breach of warranty.
 

 While on the face of the pleadings in the instant case there seems to exist a cause of action for breach of warranty, this court feels that the approach taken by the New Jersey Supreme Court in
 
 Jackson
 
 v.
 
 Muhlenberg Hosp.
 
 (53 N. J. 138,
 
 supra)
 
 is correct. All factors in regard to public policy must be considered and there must be a weighing of interest between the unfortunate patients who contract the disease and the general public who are in constant need of blood from these commercial blood banks. (See 2 Frumer & Freeman, Products Liability, § 16.03[4]; Restatement, Torts 2d, § 402A [Comment a].) There should be a record developed at trial similar to that outlined in
 
 Jackson
 
 before this court can say whether there should or should not be liability cast upon commercial blood banks in serum hepatitis cases.
 

 Although the Legislature should express the State’s policy in this area, as was done in other States (see California Health and Safety Code, § 1606; Ariz. Rev. Stat. Ann., § 36-1151) the courts are also capable of considering public policy in reaching decisions.
 
 (Rosenstiel
 
 v.
 
 Rosenstiel,
 
 16 N Y 2d 64, 74.)
 

 Thus, it is the opinion of this court that since defendant blood bank may be liable for negligence and that there may be a cause of action for breach of warranty, the court will not now dismiss the two causes of action as a matter of law, but will wait until all facts are developed at a trial so that public policy and interest may be considered.
 

 Having decided that this court will not dismiss either cause of action as having no merit, the next consideration is the contention by defendant that it did not supply the blood which allegedly caused the injury. In support of this contention, said defendant
 
 *738
 
 has supplied the court with copies of depositions of Dr. Primm, the Director of Professional Services of defendant hospital, and copy of hospital’s blood bank log book. Defendant’s argument is that the hospital’s blood bank log book, which is the book of original entry of purchases of blood, shows that the purchase of the particular lot of blood involved herein came from another blood bank. Furthermore, it contends that the depositions show that the transfusion record book which has an entry of defendant’s name as supplier of the blood used, was an error of transcription, since such information was copied from the blood bank log book. In reading both the depositions of March, 1968 and the continued deposition of April, 1969, there appears to be a question of fact as to the source of the information contained in the transfusion record. In the March, 1968 examination before trial, the doctor was asked where the information entered in the transfusion record came from. The doctor answered
 
 “
 
 Off the bottle and off the record that comes with the blood. Each bottle of blood that any blood bank delivers, has a record with that bottle of blood ”. On the April, 1969 examination, the doctor was asked whether the entries in the transfusion record consisted of transcriptions from the original blood bank log book, and answered “ yes, to the best of my knowledge ”. There thus appears to be a discrepancy in testimony as to the source of the information contained in the transfusion record which must be determined at a trial. Facts may substantiate defendant blood bank’s contention or might show that the original record is incorrect and that the transfusion record is correct. Where there is doubt as to the existence of' a triable issue or when the issue is arguable, summary judgment will not be granted.
 
 (Falk
 
 v.
 
 Goodman,
 
 7 N Y 2d 87, 91.)
 

 Accordingly, the motion by defendant hospital is granted and the motion by defendant blood bank is denied.