Hoffman, Appellant, *v.* Misericordia Hospital of Philadelphia.

502

Argued January 16, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David C. Harrison,* with him *Mitchell A. Kramer,* and *Kramer and Harrison,* for appellant.

*Francis E. Shields,* with him *Dolores B. Spina,* and *Pepper, Hamilton & Scheetz,* for appellee.

OPINION BY MR. JUSTICE EAGEN, July 2, 1970:

This action in assumpsit instituted against the Misericordia Hospital of Philadelphia [Hospital], the American Red Cross and the National Blood Service of Philadelphia seeks damages for death allegedly caused by a transfusion of impure blood.

The Hospital filed preliminary objections to the complaint in the nature of a demurrer, contending that the complaint did not state a valid cause of action. These preliminary objections were sustained in the court below, and the action was "dismissed" as to the Hospital. From this order the plaintiff appealed.[1]

The complaint alleged, inter alia, that Margaret Sullivan, plaintiff's decedent, was admitted as a medical patient to the Hospital on May 2, 1967, where she remained until May 10, 1967; that during this period the Hospital "sold" to the decedent "for a consideration" quantities of blood which were transfused into her circulatory system; that the blood, in part, was obtained from the Hospital's own blood bank; and that as a result of the transfusions the decedent contracted serum hepatitis, which caused her death on June 29, 1967.

The action is based on the alleged breach by the Hospital of the implied warranty of merchantability and/or the implied warranty of fitness for the particular purpose.

In determining whether a demurrer should be sustained and the complaint dismissed the question presented is whether, on the facts averred, the law says with certainty that no recovery is possible: *King v. U.S. Steel Corp.*, 432 Pa. 140, 247 A. 2d 563 (1968); *Sun Ray Drug Co. v. Lawler*, 366 Pa. 571, 79 A. 2d 262

---

[1] The appeal before us does not involve the questions of whether or not a valid cause of action was pleaded against either the American Red Cross or the National Blood Service.

(1951). In considering the demurrer, every well-pleaded material fact set forth in the complaint, as well as all inferences reasonably deducible therefrom, must be taken to be admitted: *Yania v. Bigan,* 397 Pa. 316, 155 A. 2d 343 (1959); *Mistick v. Cammack,* 397 Pa. 296, 154 A. 2d 588 (1959). A demurrer does not, however, admit the pleader's conclusions of law: *Eden Roc Country Club v. Mullhauser,* 416 Pa. 61, 204 A. 2d 465 (1964); *Lerman v. Rudolph,* 413 Pa. 555, 198 A. 2d 532 (1964). Of course, where the complaint shows on its face that the claim is devoid of merit, the demurrer should be sustained: *Greenberg v. Aetna Insurance Co.,* 427 Pa. 511, 235 A. 2d 576 (1967), *cert. denied,* 392 U.S. 907, 88 S. Ct. 2063 (1968). But if there is any doubt as to whether the demurrer should be sustained, such doubt should be resolved in favor of refusing to enter it: *Sun Ray Drug Co. v. Lawler,* supra; *Moran v. Bair,* 304 Pa. 471, 156 A. 81 (1931).

Whether a hospital should be liable in assumpsit for breach of an implied warranty of merchantability and/or for breach of an implied warranty of fitness for a particular purpose due to death caused by a transfusion of blood containing hepatitis virus is an issue of first impression in the appellate courts of Pennsylvania. Various other states have rendered decisions on or related to this issue, but none has so far explicitly determined that a hospital is liable for such an occurrence.

In most instances, liability of the hospital has been denied on the authority of *Perlmutter v. Beth David Hospital,* 308 N.Y. 100, 123 N.E. 2d 792 (1954).[2] The

---

[2]See *Sloneker v. St. Joseph's Hospital,* 233 F. Supp. 105 (D. Colo. 1964); *White v. Sarasota County Public Hospital Board,* 206 So. 2d 19 (Fla. Ct. App. 1968); *Hoder v. Sayet,* 196 So. 2d 205 (Fla. Ct. App. 1967); *Lovett v. Emory University, Inc.,* 116 Ga. App. 277, 156 S.E. 2d 923 (1967); *Koenig v. Milwaukee Blood Center, Inc.,* 23 Wis. 2d 324, 127 N.W. 2d 50 (1964). Cf. *Dibblee v. Dr. W. H. Groves Latter-Day Saints Hospital,* 12 Utah 2d 241, 364 P. 2d 1085

New York Court of Appeals (in a 4-3 decision) there reasoned that the transfer of whole blood for the purpose of transfusion, even for a consideration, is an incident to the paramount function of the hospital of providing medical services by making available the human skill and physical material by means of which the patient's health may be restored. Thus the overall contractual relationship between the hospital and the patient is viewed as one for services to which concepts of sale are not applicable, even with respect to transfers of individual healing materials for separate consideration. The Majority of the Court further reasoned that implied warranties of merchantability and fitness for a particular purpose arise from sales, and thus concluded that no such warranties could arise in this situation.[3]

The *Perlmutter* analysis has been criticized,[4] questioned[5] and rejected.[6] Some courts, including possibly

---

(1961); *Gile v. Kennewick Public Hospital District*, 48 Wash. 2d 774, 296 P. 2d 662 (1956), 59 A.L.R. 2d 761 (1958).

[3]The following is a skeletal formation of the *Perlmutter* logic: 1. Implied warranties arise in sales transactions. 2. This transaction is not a sale. 3. Therefore, no implied warranties arose. No consideration is given to the possibility that warranties may be implied in non-sales transactions, thus placing an undue emphasis upon whether the elements of a technical sale are present.

[4]Farnsworth, *Implied Warranties of Quality in Non-Sales Cases*, 57 Colum. L. Rev. 653 (1957); Garibaldi, *A New Look at Hospitals' Liability for Hepatitis-Contaminated Blood on Principles of Strict Tort Liability*, 48 Chi. Bar Rec. 204 (1967); 69 Harvard L. Rev. 391 (1955); 37 Notre Dame Lawyer 565 (1962); 18 Okla. L. Rev. 104 (1965); 29 St. John's L. Rev. 305 (1955); 103 U. Pa. L. Rev. 833 (1955).

[5]*Gottsdanker v. Cutter Laboratories*, 182 Cal. App. 2d 602, 6 Cal. Rptr. 320 (App. Ct. 1960), 79 A.L.R. 2d 290 (1961). A hearing was denied by the Supreme Court of California in this case on September 7, 1960.

[6]*Cunnningham v. MacNeal Memorial Hospital*, 113 Ill. App. 2d 74, 251 N.E. 2d 733 (App. Ct. 1969) (Transfer of whole blood for purpose of transfusion constituted a sale.); *Cintrone v. Hertz Truck*

those in New York itself (see *Carter v. Inter-Faith Hospital of Queens*, 60 Misc. 2d 733, 304 N.Y.S. 2d 97 (1969)), have followed *Perlmutter* as to hospital defendants but have rejected it as to commercial blood banks.[7]

Although one Pennsylvania case,[8] involving a construction agreement, does seem to require the existence of a technical sale before implied warranties may arise, in many cases[9] we have implied warranties in non-sales transactions. Although these cases were decided prior

---

*Leasing*, 45 N. J. 434, 212 A. 2d 769 (1965) (Rental of vehicle under a bailment for hire relationship is accompanied by implied warranty that vehicle is fit for operation on public highways continuing for the agreed rental period.); *Newmark v. Gimbel's Incorporated*, 102 N.J. Super. 279, 246 A. 2d 11 (App. Div. 1968) (Although generally considered a service transaction, where hairdresser selected and furnished product for use in administration of permanent wave to customer, there was an implied warranty that the product was reasonably fit for the purpose for which it was to be used.). See also *Jackson v. Muhlenberg Hospital*, 96 N.J. Super. 314, 232 A. 2d 879 (Law Div. 1967), *rev'd on other grounds*, 53 N.J. 138, 249 A. 2d 65 (1969) (semble) (Transfer of whole blood for purpose of transfusion constituted a sale.).

[7]*Hoder v. Sayet*, 196 So. 2d 205 (Fla. Ct. App. 1967); *Russell v. Community Blood Bank, Inc.*, 185 So. 2d 749 (Fla. Ct. App. 1966), *modified*, 196 So. 2d 115 (Fla. 1967) (Transfer of whole blood by a blood bank for the purpose of transfusion constituted a sale.). *Contra, Whitehurst v. American National Red Cross*, 1 Ariz. App. 326, 402 P. 2d 584 (1965); *Balkowitsch v. Minneapolis War Memorial Blood Bank*, 270 Minn. 151, 132 N.W. 2d 805 (1965); *Goelz v. J. K. & Susie L. Wadley Research Institute and Blood Bank*, 350 S.W. 2d 573 (Tex. Civ. App. 1961).

[8]*York Heating Co. v. Flannery*, 87 Pa. Superior Ct. 19 (1926).

[9]*Conn v. Hunsberger*, 224 Pa. 154, 73 A. 324 (1909) (bailment for hire); *Shannon v. Boggs & Buhl*, 124 Pa. Superior Ct. 1, 187 A. 313 (1936) (bailment lease); *Hartford Battery Sales Corp. v. Price*, 119 Pa. Superior Ct. 165, 181 A. 95 (1935) (lease of personal property); *The White Co. v. Francis*, 95 Pa. Superior Ct. 315 (1929) (bailment lease); *Crown Printing Co. v. Charles Beck Co.*, 73 Pa. Superior Ct. 419 (1920) (bailment lease); *Dufort v. Smith*, 53 Pa. D. & C. 307 (1944) (bailment for hire).

to our adoption of the Uniform Commercial Code,[10] that enactment did not intend to impede the parallel development of warranties implied in law in non-sales situations.[11] We therefore do not feel obligated to hinge any resolution of the very important issue here raised on the technical existence of a sale. In this respect, we agree with the following statement made by a court of a sister state: "It seems to us a distortion to take what is, at least arguably, a sale, twist it into the shape of a service, and then employ this transformed material in erecting the framework of a major policy decision": *Russell v. Community Blood Bank, Inc.*, 185 So. 2d 749, 752 (Fla. Ct. App. 1966). In view of our case law implying warranties in non-sales transactions, it cannot be said with certainty that no recovery is permissible upon the claim here made, even if it should ultimately be determined that the transfer of blood from a hospital for transfusion into a patient is a service: See also, Note, *A New Principle of Products Liability in Service Transactions*, 30 U. Pitt. L. Rev. 508 (1969). It was therefore error for the lower court to have sustained the preliminary objections in the nature of a de-

[10]Act of April 6, 1953, P.L. 3, as amended by the Act of October 2, 1959, P.L. 1023, 12A P.S. §1-101 et seq. (Supp. 1970).

[11]Uniform Commercial Code, Comment 2 to §2-313 provides: "Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract. They may arise in other appropriate circumstances such as in the case of bailments for hire, whether such bailment is itself the main contract or is merely a supplying of containers under a contract for the sale of their contents. The provisions of Section 2-318 on third party beneficiaries expressly recognize this case law development within one particular area. Beyond that, the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise."

murrer on the authority of *Perlmutter* on the present record[12] without sufficient inquiry as to whether the policies for which warranties are implied in law would be furthered by their implication in this situation.

Because we feel that recovery was not certainly precluded whether one characterized the transfer of the blood a sale or a service, we do not deem it essential or, due to the sparsity of the record at this stage of the litigation, wise to decide this question at this time. Nevertheless, recognizing that the law in the area of products liability is in a state of flux, we wish to make clear what this decision does *not* mean. We do not decide that the extent of the warranties implied at common law in non-sales situations need necessarily be the same as those given statutory sanction in sales transactions under the Uniform Commercial Code, supra: Compare the cases cited in footnote 9 with *Vlases v. Montgomery Ward & Company,* 377 F. 2d 846 (3rd

---

[12]The lower court, in a sense, took judicial notice of the fact that it is impossible to detect the presence of hepatitus virus in whole blood provided for transfusions, relying on information contained in opinions of other courts therefor. Although courts can take judicial notice of scientific and medical facts which are generally known (See *Adams v. Scheib,* 408 Pa. 452, 184 A. 2d 700 (1962) and *Moffett v. Harbison-Walker Co.,* 339 Pa. 112, 14 A. 2d 111 (1940)), because of the importance of this fact to this litigation, the rapidity with which medical technology develops and the time lapse since the decisions relied upon by the lower court, we would prefer to leave open for trial, where a complete record could be developed, whether or not whole blood used in transfusions is unavoidably unsafe: See *Community Blood Bank, Inc. v. Russell,* 196 So. 2d 115 (Fla. 1967) ; *Jackson v. Muhlenberg Hospital,* 53 N.J. 138, 249 A. 2d 65 (1969) ; *Carter v. Inter-Faith Hospital of Queens,* 60 Misc. 2d 733, 304 N.Y.S. 2d 97 (1969). See generally 14 Am. Jur. Proof of Facts 115-210. See also "Test Detects Hepatitus Virus in Blood Samples," *Medical World News* (Sept. 1964). We also question the propriety of the lower court's taking judicial notice "that the supplying of blood to a blood bank or hospital is on a principally donor-donee basis". There is no evidence of record to support such an assertion.

Cir. 1967). Nor do we decide that all types of sales transactions in all situations necessarily give rise to warranties of the same extent,[13] or whether any duty existed on the part of the hospital or the physician to warn the patient of any risk that may exist in the performance of the blood transfusion due to hepatitis virus.[14]

We do note that in several jurisdictions liability of the hospital has been denied, at least in part, because of the existence of the defense of charitable immunity in those cases: *Gile v. Kennewick Public Hospital District*, 48 Wash. 2d 774, 296 P. 2d 662 (1956), 59 A.L.R. 2d 761 (1958) ; *Koenig v. Milwaukee Blood Center, Inc.*, 23 Wis. 2d 324, 127 N.W. 2d 50 (1964). Cf. *Goelz v. J. K. & Susie L. Wadley Research Institute and Blood Bank*, 350 S.W. 2d 573 (Tex. Civ. App. 1961). In Pennsylvania, a hospital, although a charitable organization, is subject to liability to a paying patient who suffers personal injuries as the result of the hospital's negligence: *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A. 2d 193 (1965). We have also held unequivocally that the doctrine of immunity of charitable institutions from liability in tort no longer exists in the Commonwealth of Pennsylvania: *Nolan v. Tifereth Is-*

---

[13]Compare *Vlases v. Montgomery Ward & Company*, supra, with *Russell v. Community Blood Bank, Inc.*, 185 So. 2d 749 (Fla. Ct. App. 1966), *modified*, 196 So. 2d 115 (Fla. 1967) ; *Jackson v. Muhlenberg Hospital*, 96 N.J. Super. 314, 232 A. 2d 879 (Law Div. 1967), *rev'd* 53 N.J. 138, 249 A. 2d 65 (1969) (semble) ; *Adams v. Scheib*, supra n. 12; *Eimco Corp. v. Lombardi*, 193 Pa. Superior Ct. 1, 162 A. 2d 263 (1960) ; and *Frigidinners v. Branchtown Gun Club*, 176 Pa. Superior Ct. 643, 109 A. 2d 202 (1954). See also, 2 Frumer & Friedman, Products Liability §16.03 [4] and particularly the cigarette cases discussed therein.

[14]Compare *Davis v. Wyeth Laboratories, Inc.*, 399 F. 2d 121 (9th Cir. 1968) with *Sloneker v. St. Joseph's Hospital*, 233 F. Supp. 105 (D. Colo. 1964) and *Fischer v. Wilmington General Hospital*, 1 Storey 554, 149 A. 2d 749 (Del. Super. Ct. 1959).

*rael Synagogue,* 425 Pa. 106, 227 A. 2d 675 (1967). We express no opinion at this time, however, whether any such immunity should exist to causes of action based on the contractual warranties here in issue: See *Forrest v. Red Cross Hospital,* 265 S.W. 2d 80 (Ky. 1954). Nor do we express any opinion as to any other defenses that could exist to causes of action in warranty, such as assumption of risk or break in the chain of proximate causation: See *Jackson v. Muhlenberg Hospital,* 96 N.J. Super. 314, 232 A. 2d 879 (Law Div. 1967).

We do, however, feel that all of these issues are pertinent to a proper disposition of the cause of action here stated, and we encourage the parties to explore them so as to provide the lower court and/or jury with adequate information upon which to make a decision in conformity with this opinion.

The Order of the lower court is vacated and the record is remanded for further proceedings consistent with this opinion.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I disagree with a number of factual statements as well as legal principles and conclusions of law set forth in the Majority Opinion. Moreover, I particularly dissent because of my continued very strong opposition to *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A. 2d 193, and *Nolan v. Tifereth Israel Synagogue,* 425 Pa. 106, 227 A. 2d 675, for the reasons emphatically set forth therein.