## Huberman v. Warminster Township

*Leonard B. Rosenthal,* for plaintiff.
*Stephen B. Harris,* for defendants.

MIMS, *J.,* January 30, 1981—This matter is before the court on preliminary objections under Bucks County R.C.P.*266. This is the second time that the case has been considered under Rule *266. On December 16, 1980, due to our conclusion that equity lacked jurisdiction, this court entered an order dismissing the complaint in equity as to Warminster Township and a number of its officials. The other defendants, all private individuals, are now seeking dismissal of the remainder of the complaint for failure of plaintiff to state a cause of action. Because the foregoing would result in a final resolution of plaintiff's suit in its present posture, we find it necessary to write this opinion.

The factual situation here is not unlike that in a place called River City. There one Harold Hill once remarked: "There is trouble right here in River City with a capitol "T" that rhymes with "P" and that stands for pool." Meredith Willson, The Music Man (1957).

Originally plaintiff, Howard Huberman, filed a complaint in equity alleging that Warminster Township and its named officials were, contrary to the applicable zoning ordinance, denying him a use and occupancy permit to operate his family billiard parlor in the Tudor Square Shopping Center. He

also sought injunctions against defendant Kathleen Hodgkinson and defendants Fred and Helen Van der Mooren. Mr. Huberman alleged that Kathleen Hodgkinson sent a letter to the merchants of the Tudor Square Shopping Center urging them to object to the rental of a store for use as a pool hall and threatening a boycott by local residents if they did not comply. Furthermore, the complaint alleged that defendants Fred and Helen Van der Mooren sent a letter to Century 21, which franchises the local Century 21 office, rental agent for the shopping center, seeking to induce the franchisor to terminate plaintiff's existing lease.

Preliminary objections were filed on behalf of all defendants. Those of Warminster Township and its officials have previously been sustained. Those of defendants Hodgkinson and the Van der Moorens are now ready for disposition.

The issues raised are:

1. Is the assertion of First Amendment rights in the context of a threatened consumer boycott and an interference by residents in the contractual relationship between a shopping center lessor and lessee properly presented by way of preliminary objections in the nature of demurrers?

2. Is a threatened consumer boycott of merchants, so as to encourage them to take action against the leasing of a pool hall, protected speech under the First Amendment or an illegal restraint of trade?

3. Is the sending of a letter to the realtor handling the rental of a store for use as a pool hall an illegal interference with a contractual relationship when the letter is sent by protesting local residents and urges termination of an existing lease?

Preliminary objections in the nature of a demur-

rer admit as true all well pleaded facts and the inferences reasonably deducible from them but do not admit conclusions of law: Firing v. Kephart and Sloan, 466 Pa. 560, 353 A. 2d 833 (1976); Bear v. Reformed Mennonite Church, 462 Pa. 330, 341 A. 2d 105 (1975). A demurrer will be sustained only if the law says with certainty that no recovery is possible and if the complaint is devoid of merit: Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501, 267 A. 2d 867 (1970). Where any doubt exists, a demurrer will be denied. Id.

The test as stated by the Pennsylvania Supreme Court in Firing, 466 Pa. at 563-564, 353 A. 2d at 835, is ". . . not whether the applicable law is clear and free from doubt, but whether it is clear and free from doubt from the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. The role of the court in ruling on preliminary objections in the nature of a demurrer is to determine whether or not the facts pleaded are legally sufficient to permit the action to continue. This is so whether the legal determination to be made is relatively simple or relatively difficult."

The court further noted that, where there is no factual dispute, a ruling on preliminary objections is "clearly the appropriate juncture" to interpret the law and to determine the merits of plaintiff's claim: Firing, 466 Pa. at 564, 353 A. 2d at 835.

Pa.R.C.P. 1509 authorizes the raising in an equity action of the preliminary objections listed in Pa.R.C.P. 1017(b), including a demurrer. However, Rule 1030 which is made applicable to actions in equity by Pa.R.C.P. 1501 states that "[a]ll affirmative defenses . . . shall be pleaded in a responsive pleading under the heading "New Matter."

With the above principles in mind, we review the circumstances of the instant case.

Defendants are threatening an economic boycott in their capacity as private individuals who live in the vicinity of the Tudor Square Shopping Center and who, as stated in the August 22, 1980 letter to the merchants of the shopping center included in plaintiff's complaint as Exhibit A, fear "delinquency and vandalism, and decrease in . . . property values." They are not motivated by their own commercial interests but by what they perceive as the social interests of their community. This inference is the only one logically deducible from plaintiff's complaint.

In Pennsylvania specific state antitrust legislation has never existed. Instead common law principles have controlled and have long held an unreasonable restraint of trade unlawful: Sun Drug Company v. West Penn Realty Company, 439 Pa. 452, 268 A. 2d 781 (1970); Cleaver v. Lenhart, 182 Pa. 285, 37 Atl. 811 (1897). In 1973 the Pennsylvania Supreme Court in Collins v. Main Line Board of Realtors, 452 Pa. 342, 304 A. 2d 493 (1973), cert. denied, 414 U.S. 979 (1973), held that the Federal Sherman Antitrust Act of July 2, 1890, 26 Stat. 209, 15 U.S.C.A. § 1 et seq., embodied Pennsylvania's common law doctrine concerning restraint of trade. The court decided the case by applying federal case law and ruled that a real estate multiple listing service unreasonably restrained trade by excluding competing realtors. Accordingly, we will also look to Federal law to determine whether there has been an antitrust violation here.

Section 1 of the Sherman Act reads in relevant part: "Every contract, combination . . . or conspiracy, in restraint of trade or commerce among the

several States . . . is declared to be illegal. . . ." 15 U.S.C.A. *1.

Recently the Federal courts have considered the issue of the application of the Sherman Antitrust Act to politically and socially motivated economic boycott. In State of Missouri v. National Organization for Women, Inc. (NOW) 467 F. Supp. 289 (W.D. Mo. 1979), aff'd 620 F. 2d 1301 (8th Cir. 1980), cert. denied, _____ U.S. _____, 101 S.Ct. 122 (1980), the Eighth Circuit Court of Appeals held that NOW's politically motivated economic boycott to discourage the holding of conventions in states that had not ratified the Equal Rights Amendment did not violate the Sherman Act or Missouri antitrust law. Nor did it constitute the common law tort of intentional interference with a prospective contractual relation as provided in Restatement, 2d, Torts, §766B. The court stated, at p. 1319:

"We hold today that the Sherman Act does not cover NOW's boycott activities on the basis of the legislative history of the Act and of the Supreme Court's consideration of the legislative history. We hold the same reasoning is applicable to Missouri's Antitrust Act. We hold that NOW's boycott activities are privileged on the basis of the First Amendment right to petition and the Supreme Court's recognition of that important right when it collides with commercial effects of trade restraints."

In reaching its decision the NOW court determined that the act was never intended to apply to political or social boycotts and that "a more accurate phrasing of Congress' concern to be not the elimination of boycotts, but elimination of boycotts used by a competitor against a competitor. . . ." NOW, 620 F. 2d at 1310.

In the case at bar, there is no suggestion in the complaint that any of defendants are commercially motivated. They are not business competitors of Mr. Huberman. Rather they are local residents exercising their First Amendment rights in pursuit of social goals. Accordingly, on the basis of the NOW case, we hold that defendant Kathleen Hodgkinson has not acted to unreasonably restrain trade within the meaning of the Sherman Act as incorporated with the common law of Pennsylvania.

The Pennsylvania Supreme Court case, 1621, Inc. v. Wilson, 402 Pa. 94, 166 A. 2d 271 (1960), is remarkably similar on its facts to the one at bar. There local residents were picketing a taproom located in premises zoned for such a use because they claimed that its presence was dangerous to the health and general welfare of the area. The owners of the taproom sought a preliminary injunction to restrain the picketing. When the lower court refused to grant the injunction, they appealed. The supreme court reasoned that the "right to publicly communicate one's ideas to others and to air grievances . . . [is] among the fundamental personal rights and liberties which are secured to all persons by the due process clause of the Fourteenth Amendment." 1621, Inc., 402 Pa. at 102-103, 166 A. 2d at 275. Furthermore, the court determined that the Fourteenth Amendment would prohibit the state from issuing an injunction that would interfere with free speech except upon a showing of a compelling reason.

The court additionally noted that peaceful picketing is accorded the same constitutional protection as free speech and may be enjoined only when it "has an objective which violates a legitimate clearly-defined law or public policy of the state."

1621, Inc., 402 Pa. at 105, 166 A. 2d at 276. When the court examined the picketers' purpose, it found that, "[t]heir objective was obvious: to convince passersby by means of persuasion, not to patronize the establishment" and to put it out of business: 1621, Inc., 402 Pa. at 107, 166 A. 2d at 278. This, the court held, was not unlawful or in violation of public policy. The residents had "simply chosen to utilize one means of expression rather than another." 1621, Inc., 402 Pa. at 108, 166 A. 2d at 278.

In this case, like the 1621 case, the premises are properly zoned and the residents are seeking to put plaintiff out of business in order to preserve their community. Their threatened boycott is equivalent to peaceful picketing and, in fact, the court in 1621 cited Watch Tower Bible and Tract Society v. Dougherty, 337 Pa. 286, 11 A. 2d 147 (1940), which held that church members and officials were justified in withdrawing their patronage from a department store or threatening to do so and in inducing others to do likewise.

In an annotation entitled "Nonlabor picketing or boycott," 93 A.L.R. 2d 1284, the right to picket or boycott in a nonlabor situation was described as qualified. The objective must be lawful and socially desirable and the court should balance the harmful consequences against the worth of the end sought. According to the holding in 1621 and contrary to plaintiff's argument, defendants' objective here is not unlawful. Furthermore, permitting local residents to protect their community by peaceful persuasion is socially desirable and in this situation outweighs any speculative damage to plaintiff's business. Also, when viewed in conjunction with the prohibition against enjoining free speech in the

form of a consumer protest without a compelling state interest as discussed by the court in 1621, Inc., an injunction here is especially inappropriate.

For the above reasons, we conclude that the law is clear with respect to defendant Hodgkinson's proposed boycott. It is not an unreasonable restraint of trade or a violation of the Sherman Act. In addition, it is not unlawful or against public policy, it is within defendant's fundamental right of free speech and, therefore, is not properly enjoinable without a compelling reason.

Plaintiff's claim against the Van der Moorens is for unlawful and improper interference with plaintiff's contractual relationship under his existing lease arrangement. He alleges that these defendants wrote to the franchisor of Century 21, which is the rental agent for Tudor Square Associates, seeking to induce the franchisor to terminate plaintiff's lease. Plaintiff requests an injunction preventing defendants from taking any further action.

The Pennsylvania Supreme Court in Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 482 Pa. 416, 393 A. 2d 1175 (1978), noted that it had previously adopted section 766 of the Restatement of Torts as its definition of the right of action for intentional interference with existing contract rights. It then held that it would adopt the more recent definition contained in section 766 and the factors listed in section 767 of the Restatement, 2d. The court, quoting from section 766, stated the elements of the cause of action as follows, 482 Pa. at 431, 393 A. 2d at 1183:

"Intentional Interference with Performance of Contract by Third Person

"One who intentionally and improperly interferes with the performance of a contract (except a

contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract."

When the instant plaintiff's complaint is read as admitting all well pleaded facts, we find that defendants have intentionally interfered with the performance of a contract between plaintiff and Tudor Square. However, we must also determine whether defendants' conduct was "improper." Here, we are guided by section 767 of the Restatement, 2d, Torts, as quoted by the Adler court at 433, 393 A. 2d at 1184:

"In determining whether an actor's conduct in intentionally interfering with an existing contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors: (a) The nature of the actor's conduct, (b) The actor's motive, (c) The interests of the other with which the actor's conduct interferes, (d) The interests sought to be advanced by the actor, (e) The proximity or remoteness of the actor's conduct to the interference and, (f) The relations between the parties."

The factors relevant to this inquiry are the actor's motives and the interests sought to be advanced. And again there is no allegation here that commercial motives exist on the part of defendants. In fact, in his brief plaintiff admits that the Van der Moorens feared the pool hall's detrimental effect on their community. As discussed in 1621, Inc., this motive is not unlawful nor against public policy.

In Watch Tower Bible and Tract Society which

was cited in 1621, Inc., plaintiff instituted suit against the Roman Catholic Church and its officials for an alleged interference with plaintiff's contractual rights. For ten years, plaintiff had conducted a series of radio programs over a radio station owned by a local department store. Defendants strongly protested the substance of the program due to its anti-Catholic orientation. A priest sent a letter to the station and its owner threatening to withdraw his patronage and saying that he also had urged his parishioners to protest. Plaintiff's contract was not renewed. The court held that: "A right of action does not arise merely because a group withdraws its patronage or threatens to do so and induces others to do likewise where the objects sought to be obtained are legitimate." Watch Tower Bible and Tract Society, 337 Pa. at 288, 11 A. 2d at 148.

Interestingly, the procedural posture of the Watch Tower Bible and Tract Society case is similar to the instant one. The lower court had sustained defendants' affidavits of defense, the equivalent of a demurrer today, and had entered judgment for them.

On the authority of Watch Tower Bible and Tract Society and because the Van der Moorens' motives and interests are not improper, we find that no tort cause of action exists under section 766 of the Restatement, 2d, Torts.

The NOW case addressed much the same issue under Missouri law. There the claim was for interference with a prospective contractual relation as provided in the Restatement, 2d, Torts, §766B, which subjects to liability "[o]ne who intentionally and improperly interferes with another's prospective contractual relation." In determining what

conduct is improper, the court looked to the factors listed in section 767 of the Restatement, 2d, just as the Adler court in Pennsylvania did. The NOW court held that: "The factors to be considered under section 767 require recognition of overriding First Amendment freedoms such as the right to petition." NOW, 620 F. 2d at 1319.

In this case the right to petition a state government is not involved. However, as discussed above, the right to further a legitimate social objective is. Contrary to plaintiff's argument, we are not protecting commercial speech but we are protecting the right to peacefully protest and boycott in support of social goals under the First and Fourteenth Amendments. Therefore, we hold that defendants Fred and Helen Van der Mooren have not acted improperly and have not committed the tort of intentional interference with a contractual situation. Moreover, we note, that although an injunction may at times be appropriate where this tort is concerned, Neel v. Allegheny Co. Memorial Park, 391 Pa. 354, 137 A. 2d 785 (1958), it would seldom be called for where it would adversely affect First Amendment free speech rights: 1621, Inc.

Thus far we have considered primarily the substantive legal aspects of plaintiff's claim. We have concluded that on the basis of the NOW case, defendant Hodgkinson has not violated the Sherman Act as incorporated into the common law of Pennsylvania and that, on the basis of the 1621 case, her conduct is protected by the First and Fourteenth Amendments to the United States Constitution. Furthermore, we have concluded that, under the standards announced in the Adler case, and on the authority of the Watch Tower Bible and Tract Society case and the reasoning of the NOW court, de-

fendants Van der Mooren have not committed the tort of intentional interference with a contractual relationship. The law on each of these issues is clear. It is now necessary to determine whether defendants' demurrers are properly presented and whether the complaint should be dismissed.

In reaching our conclusions, we have taken as true all well pleaded facts in the complaint and reasonable inferences drawn from them. We have found that the law says with certainty that no recovery is possible and that there is no doubt that plaintiff "will be unable to prove facts legally sufficient to establish his right to relief." Firing, 466 Pa. at 564, 353 A. 2d at 835. Also, we note that there are no facts in dispute and that the only contested issues are purely legal in nature. Accordingly, the test for sustaining a demurrer (Firing, Bear, Hoffman) has been met.

However, it is not at all clear whether the First and Fourteenth Amendment protections relied on in reaching our decisions are properly presentable by demurrer or whether they are affirmative defenses which must be pleaded by defendants in new matter pursuant to Pa.R.C.P. 1030. The NOW court did not directly address whether the Sherman Act simply does not extend to socially motivated boycotts or whether the First Amendment provides a defense. The 1621, Inc., court was not faced with the problem.

With respect to plaintiff's tort claim, the Adler court described "improper interference" under Restatement, 2d, Torts, §766, in terms of a privilege for promoting a legitimate interest, implying that it should be raised in new matter. However, the court in Watch Tower Bible and Tract Society, 337 Pa. at 288, 11 A. 2d at 148, expressly stated that: "A right of action does not arise merely because a group

withdraws its patronage . . . and induces others to do likewise where the objects sought are legitimate." The Restatement, 2d, Torts, in its comment to section 767, confirms our dilemma. It says that what is "improper interference" is sometimes treated as a defense to be raised by defendant and sometimes is part of plaintiff's case and that there is no consensus as to the proper procedure.

Nevertheless, because we have found the test for sustaining a demurrer satisfied and because the outcome would be identical if the issues were presented on a motion for summary judgment after the filing of a responsive pleading containing new matter, we hold that, in order to avoid needless consumption of time and expense, the demurrer is sustained and plaintiff's complaint in equity is dismissed. Accordingly, we enter the following

## ORDER

And now, January 30, 1981, upon consideration of the preliminary objections in the nature of demurrers presented by defendants Kathleen Hodgkinson, Fred Van der Mooren and Helen Van der Mooren, and for the reasons stated in the foregoing opinion, it is hereby ordered and decreed that plaintiff's complaint in equity is dismissed.