86 N.Y.2d 198 (1995)
654 N.E.2d 972
630 N.Y.S.2d 698
In the Matter of Arthur Auerbach, Respondent,
v.
Board of Education of the City School District of the City of New York et al., Appellants.
In the Matter of Edward Aquilone, Respondent,
v.
Board of Education of the City School District of the City of New York et al., Appellants.
In the Matter of Patricia Stryker, Respondent,
v.
Board of Education of the City School District of the City of New York et al., Appellants.
Court of Appeals of the State of New York.
Argued June 6, 1995.
Decided June 29, 1995.
Paul A. Crotty, Corporation Counsel of New York City (John Hogrogian and Pamela Seider Dolgow of counsel), for appellants in the first, second and third above-entitled proceedings.
Bruce K. Bryant, Brooklyn, for respondents in the first and second above-entitled proceedings.
Pryor, Cashman, Sherman & Flynn, New York City (Ronald H. Shechtman and Tina C. Kremenezky of counsel), for respondent in the third above-entitled proceeding.
Chief Judge KAYE and Judges SIMONS, BELLACOSA, SMITH, LEVINE and CIPARICK concur.
*201 TITONE, J.
The question presented by these three appeals is whether Education Law § 3107, which governs the payment of accumulated sick leave upon separation for members of the Teachers' Retirement System, applies to members holding managerial and nonmanagerial titles alike. We conclude that it does under the statute's plain language, and affirm.
Respondent Board of Education of the City of New York formerly employed petitioner Arthur Auerbach as Assistant Superintendent, petitioner Edward Aquilone as Executive Director of Personnel and petitioner Patricia Stryker as Director of Legislation. Each petitioner was a member of the Teachers' Retirement System (TRS), had previously held nonmanagerial and pedagogical positions with respondent, and at the time of retirement held a nonpedagogical managerial title. Upon retirement from service, petitioners respectively applied for retirement leave benefits pursuant to Education Law § 3107, which entitles members of TRS to payment of one half of their accrued but unused sick leave at their current full pay.
Respondent Board of Education notified petitioners that, pursuant to Chancellor's regulations which were adopted to *202 administer the salary and leave plans for managers,[*] they would be paid for unused sick leave accrued while holding nonmanagerial employment at the salary level of those former titles and they would receive payments for one third of the sick leave accrued while employed as a manager. Additionally, to be eligible for the one-third payment, the regulations require the manager to maintain an accrued balance of at least 60 days. The justification for the less-generous sick leave payments is that managers receive greater remuneration and superior benefits than nonmanagerial employees.
Petitioners Auerbach and Aquilone together, and petitioner *203 Stryker, separately, commenced CPLR article 78 proceedings, seeking a judgment directing that they be granted an increase in the amount of termination pay disbursed for unused sick leave and declaring that respondents' calculations violated Education Law § 3107. In three separate decisions, Supreme Court dismissed the petitions, concluding that their benefits were properly calculated pursuant to the Chancellor's regulations and not under the Education Law because they were managerial employees.
The Appellate Division reversed and granted the respective petitions. The Court ruled that Education Law § 3107 is unambiguous as to its application to all members of the New York City Teachers' Retirement System, and does not exclude members holding managerial positions. The Court rejected respondent School Board's claim that the statute's reference to the school calendar to limit the number of accruable sick days created an ambiguity suggesting that only school teachers are eligible for the statute's benefits and warranting resort to legislative history. Specifically, the Court stated that "[t]he mere fact that a measure was used that was most conveniently applied to the vast majority of members who are teachers hardly renders ambiguous the straightforward language applying the statute to all system members." (204 AD2d 85, 86.) The Court also noted that even if the legislative history were consulted, nothing therein indicated that managerial employees who are members of TRS are not covered by Education Law § 3107. Two Justices dissented in each proceeding "for the reasons stated by" the respective trial courts. The double dissent on the law forms the predicate for each of these appeals as of right to this Court (see, CPLR 5601 [d]).
Education Law § 3107 provides that "employees of the board of education who are members of the New York city teachers' retirement system" shall be entitled to at least 10 days of sick leave for personal illness per year which may be accumulated to a maximum of 200 days. The statute then states that "[m]embers shall upon application be granted a retirement leave of absence with full pay consisting of one-half of their accumulated unused sick leave, up to a maximum of one school term or the equivalent number of school days" (id. [emphasis supplied]). It is undisputed here that petitioners are all members of TRS. The sole dispute is whether the statute applies to all members of TRS, or only to nonmanagerial, pedagogical members. Specifically, respondent Board of Education *204 argues that the references in the statute to the "school term" and "school days" indicate that the section covers only those members of TRS who work a school calendar, and excludes coverage for managerial employees who work year-round. Alternatively, respondent argues that the use of those terms creates an ambiguity as to eligibility warranting resort to legislative history, and that the legislative history reveals that section 3107 was intended only to apply to classroom teachers. Neither argument withstands scrutiny.
Where the terms of a statute are clear and unambiguous, "the court should construe it so as to give effect to the plain meaning of the words used" (Patrolmen's Benevolent Assn. v City of New York, 41 N.Y.2d 205, 208). Resort to legislative history will be countenanced only where the language is ambiguous or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the enactment (Doctors Council v New York City Employees' Retirement Sys., 71 N.Y.2d 669, 674-675).
Here, the statute plainly affords sick leave benefits to "members of the New York city teachers' retirement system." Those "critical eligibility words * * * are nowhere limited or qualified" (id., at 675). "[M]embership [in TRS] shall consist of * * * [a]ll teachers" (Administrative Code of City of NY § 13-503 [1]), and the term "teacher" is broadly defined by regulation to include numerous nonpedagogical, managerial employees  such as superintendents, department heads, and members of the board of examiners  as well as "all regular and special teachers" of the City's public schools (Administrative Code § 13-501 [7] [a]; see also, Education Law § 3101).
Clearly, the distinction between classroom and nonclassroom teachers that respondent reads into the statute is belied by the statute's unqualified extension of sick leave benefits to TRS "members." Importantly, section 3107 contains express language limiting its coverage for members of other pension systems to those who are also "members of the permanent instructional staff" of either the Board of Higher Education or a community college. The absence of an express qualification for members of TRS indicates that the statute does not create a similar distinction between instructional and noninstructional staff for Board of Education employees. Additionally, the statute's reference to the school term relates solely to accrual limitations and has no relevance to the universe of employees eligible for the benefit. Accordingly, to the extent *205 that the Chancellor's regulations deviate from section 3107 by reducing the amount of sick leave benefits to be paid to TRS members who hold managerial positions, they contravene a legislative enactment and may not be given effect (Doctors Council v New York City Employees' Retirement Sys., 71 N.Y.2d 669, 676, supra).
Even assuming that the references to the school calendar created an ambiguity as to those eligible for section 3107's sick leave payments upon retirement, resort to the statute's legislative history does not lead to a different result. Although, as respondent notes, many of the documents contained in the Bill Jacket refer to "teachers" as the target group of the legislation (see, e.g., Sponsor's Mem, Bill Jacket, L 1960, ch 894), that term is broadly defined in the Education Law and related regulations to include both classroom and managerial personnel of the Board of Education (Education Law § 3101; Administrative Code § 13-501 [7] [a]). Additionally, references to the word teacher may simply reflect the fact that the legislation logically would have its broadest impact on classroom teachers who constitute the majority of TRS' members. The legislative history's silence as to the statute's effect on members of TRS who hold managerial positions, and who apparently constitute the statistical minority in terms of membership, does not indicate an intent to exclude such employees from the statute's beneficial sweep.
That application of Education Law § 3107 to managerial members of TRS may confer benefits upon some managerial employees but not upon others who are non-TRS members does not support the conclusion urged by respondents that the statute is only meant to cover nonmanagers. The Legislature saw fit to provide a special sick leave benefit for all members of TRS  managers and nonmanagers alike. Thus, any employee  manager or nonmanager  who is not a member of TRS will be excluded from the statute's beneficial reach. In other words, all TRS members get the "windfall" in the sense that they, unlike nonmembers, receive raises throughout their careers and accumulated sick leave payments based on a higher rate of pay.
Accordingly, in each proceeding, the determination appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.
In each proceeding, determination appealed from and order of the Appellate Division brought up for review affirmed, with costs.
NOTES
[*] Chancellor's Regulation D-605 provides in relevant part:

"9. Sick Leave Allowance
"a. Sick Leave allowance of one day per month of service shall be credited to full-time annual employees * * *
"c. The number of sick leave days allowable for lump-sum payment is determined as follows:
"(1) Vested Days  All employees regardless of length of service may be credited with work one day for each two days of sick leave earned. The amount of vested time on which this benefit is based may not exceed 200 days. Accordingly, the maximum payment possible is 100 days.
"(2) Days Earned Subsequent to Vesting  Only employees with with more than 10 years of continuous service and a final balance of at least 60 days after vesting may be credited with one work day for each three days earned.
* * *
"(14) Lump-Sum Payment on Retirement, Termination or Separation from Employment
"a. * * * there shall be a lump sum payment which may include annual leave[,] * * * sick leave * * * and overtime * * *. This payment shall not be creditable for purposes of computing the compensation on retirement.
* * *
"c. Payments made under this regulation for unused sick leave shall be made in the following manner:
"(1) For vested sick leave: * * *
"(b) A submanagerial employee entering a management position after April 1, 1979 shall be compensated at the current minimum rate of pay for the position in which the employee was serving immediately preceding entry in the management position or the rate at which the employee was paid, or the current rate of pay the employee would have been earning in the permanent title held prior to entering the managerial service, whichever is greatest."