**Angela SCHER, Jonathan Scher, Individually and as Parents and Natural Guardians of Brett Scher, an Infant, Plaintiffs,**

v.

**BAYER CORPORATION, Defendants.**

**No. CV995324DRHMLO.**

United States District Court,
E.D. New York.

April 24, 2003.

Cozen & O'Connor, New York, NY By Michael J. Sommi, for Plaintiffs.

Heidell, Pittoni, Murphy & Bach, LLP, New York, NY By Charles L. Bach, Jr., Daniel S. Ratner, for Defendant.

### ORDER

HURLEY, District Judge.

Defendants have made a motion, pursuant to Fed R. Civ. P. 56, for partial summary judgment. For the reasons discussed *infra*, the Court grants the motion.

## I. BACKGROUND

In this recitation of the facts, the Court relies upon the evidence identified in the parties' Statements of Undisputed Facts, which are required by Local Civil Rules 56.1(a) and 56.1(b).

Plaintiffs initiated this diversity action on September 3, 1999, by filing a complaint. In that complaint, Plaintiffs allege that defects in Defendant's pharmaceutical product resulted in serious personal injuries for both Angela Scher and her son, Brett Scher. Flowing from these defects, Plaintiffs claim causes of action, under the applicable New York law, for (1) negligence[1], (2) strict liability, (3) breach of implied warranty, (4) breach of express warranty and (5) negligent infliction of emotional distress.

Defendant's product was called Hyp–Rho(D)[2]. To manufacture this product, Defendant begins with a large pool of human blood gathered from donors that possess the Rho(D) antibody. Defendant then applies a complex seventeen-step chemical process to refine the blood. The refinement process involves, among other factors, the addition of ethanol, acetate buffer, sodium acetate, acetic acid, aminoacetic acid, sodium chloride and thimerosal to the human blood. The purpose of this multi-step process is to cull the Rho(D) antibody from the donated blood.

The Rho(D) antibody is used prophylactically to prevent hemolytic disease in certain newborn children and their mothers. A newborn child is at risk for this disease when, as in the instant case, the mother possesses the Rh–Negative protein in her blood and the biological father possesses the Rh–Positive protein in his blood. Plaintiffs allege that the Hyp–Rho(D) administered to Angela Scher did not have the proper amount of the Rho(D) antibody. As a result of this alleged defect,

---

1. Two causes of action for negligence are alleged.

2. Defendant inconsistently uses a "®" symbol in conjunction with this product name. Although the Court does not use this trademark symbol herein, this omission is not intended to negatively impact the validity of any marks held by Defendant.

Plaintiffs allege that Angela and Brett Scher suffered the debilitating effects of hemolytic disease.

The instant motion for partial summary judgment was filed on October 9, 2002. In that motion, Defendant argues that New York Public Health Law § 580(4) bars Plaintiffs' claims for strict liability and breach of warranty. The Court now turns to the substance of this summary judgment motion.

## II. DISCUSSION.

### A. Summary Judgment Standard.

It is axiomatic that summary judgment may be granted only when it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). It is equally axiomatic that the moving party bears the initial burden "of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Despite this burden, once the moving party has come forward with support demonstrating that no genuine issue of material fact remains to be tried, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed.R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996). With the facts and legal issues thusly framed by the parties, the Court must evaluate the proffered materials to determine whether a genuine issue of material fact remains. *Id.* In reviewing these materials, the Court "is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Id.*

### B. New York Public Health Law § 580(4).

New York has enacted a statute that states: "The collection, processing, storage, distribution or use of blood, blood components or blood derivatives for the purpose of diagnosis, prevention or treatment of disease is hereby declared to be a public health service and shall not be construed to be, and is declared not to be, a sale of such blood, blood components or blood derivatives, for any purpose or purposes whatsoever." N.Y. Pub. Health § 580(4) (McKinney's 2001). The statute appears under Title V of the New York Public Health Law: "Clinical Laboratory and Blood Banking Services."

Courts have interpreted this statute to insulate an entity, covered under the statute, from any strict liability or breach of warranty claims. *See, e.g., Samuels v. Health & Hospital Corp. of City of New York,* 432 F.Supp. 1283, 1284 (S.D.N.Y. 1977); *cf. Perlmutter v. Beth David Hospital,* 308 N.Y. 100, 123 N.E.2d 792 (1954) (stating the rule that was later codified in N.Y. Pub. Health § 580(4)). This statutory prohibition has been consistently applied to the benefit of hospitals providing blood or blood derivatives. *See, e.g., Samuels,* 432 F.Supp. at 1284.

In the instant case, the Court is confronted with a Defendant, engaged in the business of pharmaceutical manufacture and sale, who utilizes blood to create a therapeutic agent for sale. To the Court's knowledge, the New York Court of Appeals has never addressed this situation. Plaintiffs argue that Section 580(4), when evaluated in light of the other provisions of the statutory title as well as the broader policy considerations that motivated its enactment, does not embrace this specific type of Defendant. While this issue is by no means simple, Plaintiffs' argument fails to persuade the Court.

The New York Court of Appeals has held that, in questions of statutory interpretation, a court's "analysis begins with the language of the statute. If the terms are clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used." *Auerbach v. Board of Educ.*, 86 N.Y.2d 198, 204, 630 N.Y.S.2d 698, 654 N.E.2d 972 (1995) (internal quotation marks and citations omitted). Moreover, if the Court finds that the statute's language is clear and unambiguous, it need not consider the legislative history relied upon by Plaintiffs. *See Desiderio v. National Ass'n of Securities Dealers, Inc.*, 191 F.3d 198, 204 (2d Cir.1999) ("Where the text of a statute is unambiguous, we need not look at the legislative history."); *Auerbach*, 86 N.Y.2d at 204, 630 N.Y.S.2d 698, 654 N.E.2d 972.

██ On the face of N.Y. Pub. Health § 580(4), there is no manifest ambiguity. Plaintiffs argue that the Title of the New York Public Health Law in which Section 580(4) is found, "Clinical Laboratory and Blood Banking Services," renders the language of the statute ambiguous. The Court cannot agree. Ambiguity is evaluated in light of the statute itself, not in comparison to the Title or heading of the Act. *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 866 (2d Cir.1997) (noting that headings and titles do not override clear statutory text).

The Court is also aware of Plaintiffs' argument that N.Y. Pub. Health § 579(1) restricts the scope of § 580(4) to clinics and blood banks. *See* N.Y. Pub. Health § 579(1) ("This title is applicable to all clinical laboratories and blood banks operating within the state . . . ."). This argument also fails to persuade the Court. The balance of Section 579 expressly states which services and entities are not covered by the statutory title. *See* N.Y. Pub. Health § 579(2). Defendant's cir-

cumstances are not covered by these express exceptions. Accordingly, the language of Section 579 does not convince the Court that the text of Section 580(4) is ambiguous.

The Court is also aware of Plaintiffs' reliance upon N.Y. Pub. Health § 570. However, that section's description of the purpose behind "requiring the licensure of clinical laboratories and blood banks, by establishing minimum qualifications for directors, and by requiring that the performance of all procedures employed by clinical laboratories and blood banks meet minimum standards accepted and approved by the department," N.Y. Pub. Health § 570, does not aid the Court in its analysis of the language employed in Section 580(4). In short, Section 570 fails to alter the clear and unambiguous language of Section 580(4).

Finally, the Court notes that despite Plaintiffs' fervent arguments regarding the interpretation of N.Y. Pub. Health § 580(4), they cite no persuasive authority for their position. In fact, every court that has addressed this specific issue has found no ambiguity in Section 580(4). *See, e.g., King v. Sandoz Pharmaceuticals, Inc.*, No. 95 Civ. 10740, 1997 WL 289626, at *1 (S.D.N.Y. June 2, 1997). The Court concurs with this conclusion. Therefore, having found no ambiguity in the text of the statute, the Court endeavors to apply the plain meaning of N.Y. Pub Health § 580(4) to the instant facts.

██ First the Court considers whether Defendant engages in "collection, processing, storage, distribution or use of blood, blood components or blood derivatives . . . ." N.Y. Pub. Health § 580(4). The undisputed facts show that Defendant derived the Hyp–Rho(D) product by processing large supplies of blood. Plaintiffs raise the question of whether, since other chemicals are utilized in the refinement process

and ultimately remain in the product, the Court may properly consider Hyp–Rho(D) as either a blood component or a blood derivative. The Court does not reach the question of whether, at some indeterminate point, the blood or blood components could form so infinitesimal a portion of the product that Section 580(4) would not apply. In the instant case, the undisputed facts show that the sole active therapeutic agent in Hyp–Rho(D) is the Rho(D) antibody, a blood derivative. Therefore, despite Plaintiffs' arguments to the contrary, the Court concludes that Defendant engages in the "collection, processing, storage, distribution or use of blood, blood components or blood derivatives ...." *Id.*

Next, the Court considers whether the blood derivative was collected for "the purpose of diagnosis, prevention or treatment of disease ...." *Id.* There is no dispute that this Rho(D) blood derivative was refined and separated in order to prophylactically treat the onset of hemolytic disease. Plaintiffs argue that, because Defendant was involved with this product for purely commercial motives, Hyp–Rho(D) was not produced for the "the purpose of diagnosis, prevention or treatment of disease ...." *Id.* The Court recognizes that Defendant's profit motive is differentiable from the therapeutic motive of a hospital. However, the clear unambiguous language of the statute merely focuses upon the *use* of the blood derivatives, not the motivation for providing those blood derivatives. As such, the Court finds that the instant facts satisfy this element of N.Y Pub. Health § 580(4).

In light of the foregoing the Court concludes that Section 580(4) of the New York Public Health Law applies to Defendant.

Plaintiffs' final argument is that, even if N.Y. Pub. Health § 580(4) applies to Defendant, it "does not preclude Plaintiffs' claims based on Defendant's breach of express warranties." Plaintiff's Memoran-dum at 16. The applicable case law renders this argument unpersuasive. New York courts have consistently held that there is no cause of action for breach of express warranty in connection with the provision of blood or blood derivatives. *See, e.g., Payton v. Brooklyn Hospital,* 19 N.Y.2d 610, 611, 278 N.Y.S.2d 398, 224 N.E.2d 891 (1967); *Carter v. Inter–Faith Hospital of Queens,* 60 Misc.2d 733, 304 N.Y.S.2d 97, 98–99 (N.Y.Sup.1969); *Davidson v. Hillcrest General Hospital,* 40 A.D.2d 693, 336 N.Y.S.2d 296, 298 (2d Dep't 1972); *McCarthy v. Bristol Laboratories, Division of Bristol–Myers Co.,* 86 A.D.2d 279, 449 N.Y.S.2d 280, 282 n. 2 (2d Dep't 1982). Plaintiffs cite no persuasive authority to the contrary.

## III. CONCLUSIONS

For the foregoing reasons, Defendant's motion for partial summary judgment is GRANTED. Accordingly, Plaintiffs' claims regarding strict liability (Second Cause of Action), breach of implied warranty (Third Cause of Action) and breach of express warranty (Fourth Cause of Action) are dismissed. This action will continue as to the remaining claims.

**SO ORDERED.**