# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph P. Frankenberry,        :
               Appellant      :
                                 :
           v.           :    No. 105 C.D. 2017
                                 :    Submitted: April 28, 2017
Tammy S. Ferguson, Superintendent    :
at S.C.I. Benner, in her official as well    :
as her personal capacity; R. Rupert,    :
A-Block Unit Mngr at S.C.I. Benner,    :
in her official capacity; A. Nelson,    :
AB-Blocks Counselor, in her official    :
capacity and, Dr. Xue, Chief    :
Psychiatrist, CHCA at S.C.I. Benner,    :
in his official capacity    :

BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** Judge
                  **HONORABLE ANNE E. COVEY,** Judge
                  **HONORABLE JAMES GARDNER COLINS,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED: July 12, 2017**

Joseph P. Frankenberry (Frankenberry) appeals, pro se, from an Order of the Court of Common Pleas of Centre County (trial court) sustaining the preliminary objections (POs) filed by Appellees Tammy S. Ferguson, R. Rupert, and A. Nelson (Appellees).[1] The trial court granted Appellees' demurrer and dismissed

---

[1] Employed at State Correctional Institution at Benner Township, respectively, as Superintendent, A-Block Unit Manager, and AB-Blocks Counselor. Dr. Xue filed separate **(Footnote continued on next page…)**

Frankenberry's Complaint and First Amendment to Complaint (together, Complaint), with prejudice.

## I. Background

In his Complaint, Frankenberry, who is currently incarcerated in the State Correctional Institution at Benner Township (SCI-Benner), argues the following: his "Z" Code status (single cell classification) was arbitrarily and capriciously removed, and removal of his "Z" Code status was discriminatory and violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Frankenberry alleges that Appellees removed his "Z" Code status after meeting for a Housing Status Review and completing a DC-46 Vote Sheet. He asserts that Appellee Ferguson, Superintendent at SCI-Benner, makes the final determination in inmate housing matters and chose to remove his "Z" Code status despite the other Appellees' votes that such should be maintained. Frankenberry argues that his "Z" Code status should be retained because he is 73 years old, has been incarcerated for 35 years, is serving a life sentence, has had "Z" Code status for 20 years, suffers from mental and physical health problems, is active on the Psychiatric Review Team (PRT) Roster, and has a record that demonstrates aggressive behavior toward others. Accordingly, Frankenberry asserts that removal of his "Z" Code status was arbitrary and capricious and violates his constitutional rights. Frankenberry claims that these factors, considered together, show that removal of "Z" Code status places him in imminent and inevitable harm's way. Frankenberry is seeking monetary damages for these

_____

(continued…)
preliminary objections, which were sustained in a subsequent order and are not at issue in this appeal.

2

actions, as well as injunctive relief. The Complaint was accompanied by a petition for a temporary restraining order and/or preliminary injunction (Petition) to prevent Appellees from removing his "Z" Code status. Frankenberry then requested related documents for discovery.

Frankenberry subsequently filed his First Amendment to Complaint, incorporating his original Complaint with his new claim: that double-celling (*i.e.* housing two inmates in the same cell) amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Frankenberry asserts that double-celling under the conditions averred at SCI-Benner is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment because of the size of the cells and the time inmates are confined daily therein.

Appellees filed POs in the nature of a demurrer, accompanied by a motion to stay discovery, which crossed in the mail with Frankenberry's First Amendment to Complaint. In their POs, Appellees assert that Frankenberry's Complaint makes no viable claim with regard to equal protection, discrimination, or cruel and unusual punishment. Appellees also argue that Frankenberry failed to plead any viable claim against Rupert and Nelson, as Frankenberry failed to establish that they "engaged in any action or decision contrary to what Plaintiff alleges his interest is, *i.e.* retaining his Z Code." (Appellees' Br. in Support of POs at 8.) Upon receipt of the First Amendment to Complaint, Appellees filed an additional demurrer, stating that Frankenberry failed to state a cruel and unusual punishment claim based on the size of his shared cell.[2]

---

[2] In the time between the filing of the Complaint and First Amendment to Complaint, Frankenberry's "Z" Code status was revoked and he was double-celled.

3

Frankenberry filed objections to the POs, asserting that Appellees' objections were without legal merit. Accordingly, Frankenberry requested that discovery be allowed to continue.

The trial court granted Appellees' motion to stay discovery. After a hearing, the trial court denied Frankenberry's Petition. The trial court then issued the August 29, 2016 Opinion and Order sustaining Appellees' POs and dismissing Frankenberry's Complaint.

With regard to the equal protection and discrimination claims, the trial court reasoned that all of Frankenberry's allegations in regard to this matter are mere conclusions unsupported by facts. The trial court explained that, to the extent Frankenberry asserts an equal protection claim, prisoners are not a suspect classification and the decision to remove "Z" Code status must be evaluated under a rational basis test. Thus, as Appellees' "Z" Code status review process falls within their discretion, the trial court found that Frankenberry failed to allege an equal protection claim.

With regard to the removal of "Z" Code status constituting cruel and unusual punishment, the trial court reasoned that Frankenberry failed to show that this resulted in a denial of the minimum civilized measure of life's necessities. The trial court added that Frankenberry's allegations of "mental anguish" and "imminent harm" are speculative and, accordingly, fail to set forth a claim. (Trial Ct. Op. at 5.)

The trial court next addressed Frankenberry's allegations of cruel and unusual punishment based on cell size, reasoning that double-celling alone is not a denial of life's necessities nor does it violate contemporary norms of decency. As Frankenberry did not allege any other issue with housing conditions at SCI-

4

Benner, the trial court found that he had failed to state a cruel and unusual punishment claim based on the cell size.

As the trial court found that double-celling is not, per se, unconstitutional, Appellees Rupert and Nelson were dismissed as parties. The trial court reasoned that Frankenberry does not have a claim against them based solely on their alleged failure to adhere to a policy statement and, as no constitutional violation was committed, no claims remained against Appellees Rupert and Nelson.

## II.    Frankenberry's Appeal

Frankenberry filed a timely notice of appeal[3] from the trial court's August 29, 2016 Order accompanied by an Application for Relief requesting a Temporary Restraining Order with the Superior Court of Pennsylvania, which noted that this matter is within the appellate jurisdiction of the Commonwealth Court.[4] The Superior Court directed Frankenberry to show cause as to why this appeal should not be transferred, to which he timely responded acknowledging this Court's jurisdiction in this matter. Accordingly, the Superior Court transferred this appeal, along with Frankenberry's Application for Relief to this Court for disposition.

---

[3] Though the notice of appeal was not filed with the clerk of the trial court as required by Rule 905(a)(1) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 905(a)(1), Rule 905(a)(4) mandates that when appeals are

> filed in an incorrect office within the unified judicial system, the clerk shall immediately stamp it with the date of receipt and transmit it to the clerk of the court which entered the order appealed from, and . . . the notice of appeal shall be deemed filed in the trial court on the date originally filed.

Pa. R.A.P. 905(a)(4); *see also Howard v. Dep't of Transp.*, 73 A.3d 648, 649 (Pa. Cmwlth. 2013).

[4] *See* Sections 761(a)(1)(v) and 762(a)(1)(i) of the Judicial Code, 42 Pa. C.S. §§ 761(a)(1)(v), 762(a)(1)(i); *Balshy v. Rank*, 490 A.2d 415, 416 (Pa. 1985).

5

On appeal, Frankenberry argues that: the trial court erred in sustaining the demurrer when Appellees removed his longstanding "Z" Code status without rationale or justification; Appellees' demurrer should not have been sustained with regard to his claim that double-celling constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution; removal of his "Z" Code status was discriminatory, which implicates the Fourteenth Amendment Equal Protection claim that he had specifically asserted in his Complaint; and the trial court's decision to grant Appellees' protective order resulting in a stay of discovery denied him the opportunity to support his arguments with evidence and seek redress for his claims.[5] Because the trial court did not err in finding that Frankenberry failed to state a cause of action under the alleged facts and did not abuse its discretion in staying discovery, we affirm the dismissal of the Complaint.

Preliminarily, we note that, when an appellate court reviews a trial court's order sustaining preliminary objections in the nature of a demurrer, "the standard of review is *de novo* and the scope of review is plenary." *Balletta v. Spadoni*, 47 A.3d 183, 188 n.2 (Pa. Cmwlth. 2012). This Court's review is limited to determining whether there has been an error of law or an abuse of discretion. *Jones v. City of Phila.*, 893 A.2d 837, 842 n.3 (Pa. Cmwlth. 2006). The standard of review for a demurrer is limited, as the question presented by a demurrer is whether the law says with certainty that no recovery is possible on the facts set forth in the complaint. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005); *MacElree v. Phila. Newspapers, Inc.*, 674 A.2d 1050, 1056 (Pa. 1996). Courts evaluate such objections by accepting as true all well-pled

---

[5] Though Frankenberry argues these points in a different order in brief, we have rearranged these points for ease of resolution.

6

facts in the complaint and reasonable inferences arising from those facts. *Kull v. Guisse*, 81 A.3d 148, 154 n.3 (Pa. Cmwlth. 2013). A demurrer does not admit any conclusions of law in the complaint. *Hoffman v. Misericordia Hosp. of Phila.*, 267 A.2d 867, 868 (Pa. 1970). A demurrer should be sustained if the complaint shows *prima facie* that the claim is devoid of merit. *Id.* If any doubt exists as to whether a demurrer should be sustained, such doubt should be resolved in favor of overruling it. *Bilt-Rite*, 866 A.2d at 274; *Hoffman*, 267 A.2d at 868.

### A. "Z" Code Status Removal

Frankenberry alleges that the trial court erred as a matter of law by sustaining Appellees' demurrer when Appellees removed Frankenberry's longstanding "Z" Code status without rationale or justification. DOC has a policy which applies to determinations about an inmate's eligibility for "Z" Code status.[6] In accordance with the Policy, "DOC considers several factors, including misconduct reports, recommendations from medical and psychiatric staff and reports from other staff members who have knowledge of the inmate's behavior." *Johnson v. Horn*, 782 A.2d 1073, 1074 (Pa. Cmwlth. 2001). In addition, inmates who are "evaluated by psychiatric or psychological staff as having mental health problems [such that they are viewed as] (1) dangerous to self; (2) dangerous to others; (3) self-mutilative; (4) unable to care for self; and/or (5) active on the [PRT] roster" shall be "carefully reviewed by staff and **considered**" for the program. Policy at 5-2 (emphasis added) (footnote omitted). When an annual "Z" Code status review results in a recommended change, "a DC-46, [v]ote [s]heet

---

[6] DOC Policy 11.2.1: Reception and Classification, 5-1—5-4, *available at* http://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/11.02.01%20Reception%20and%20Classification.pdf (last visited July 11, 2017).

along with other relevant information shall be circulated to the Facility Manager [Appellee Ferguson] who shall make the final decision. The staff action and rationale for "Z" Code housing status shall be documented . . . ." Policy at 5-3.

Frankenberry argues that the trial court failed to note that Appellee Ferguson revoked his "Z" Code status despite the other Appellees' votes that it be maintained and did not provide him with the rationale for her decision, which he deems was arbitrary and capricious. Accepting all of these allegations as fact, as we must, Frankenberry has not stated a claim by arguing that Appellee Ferguson's actions in implementing DOC policy were arbitrary and capricious. Under state law, an inmate does not have the right to confinement in a housing unit of his choosing. 37 Pa. Code § 93.11(a); *see Yount v. Dep't of Corr.*, 966 A.2d 1115, 1117 n.1 (Pa. 2009). Additionally, prison officials have discretion to transfer a prisoner for any reason or for no reason at all. *Meachum v. Fano*, 427 U.S. 215, 228 (1976); *Yount*, 966 A.2d at 1117 n.1. When adopting and executing policies and practices, "prison officials must be accorded wide ranging deference," as they are best situated to adopt solutions "that in their judgment are necessary to preserve internal order and to maintain institutional security." *Robson v. Biester,* 420 A.2d 9, 12 (Pa. Cmwlth. 1980) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Federal law similarly holds that the placement of prisoners within the prison system falls within the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than the federal courts." *Meachum*, 427 U.S. at 225.

Applying the law to this case, Appellee Ferguson has discretion to make final decisions regarding an inmate's "Z" Code status. Appellee Ferguson followed the Policy when deciding to revoke Frankenberry's "Z" Code status.

8

Indeed, prior to the revocation of his "Z" Code status, a vote sheet was circulated, it was presented to Appellee Ferguson for review and a final decision, and the action and rationale were properly documented. Nowhere does the Policy require that the Facility Manager communicate the rationale for a "Z" Code status decision to the inmate. Further, simply because an inmate meets the qualifications for "Z" Code status does not mean that inmate is "entitled to a declaration that he be assigned single cell status under the Policy." *Johnson*, 782 A.2d at 1077 (holding that an inmate with Hepatitis C was not entitled to "Z" code status). Inmates that fit these criteria are only entitled to be **considered** for "Z" Code status. Therefore, the trial court did not err in deferring to Appellee Ferguson's decision to revoke Frankenberry's "Z" Code status and finding that Frankenberry failed to state a claim.

B.     Double-Celling and Eighth Amendment

Frankenberry next asserts that revocation of his "Z" Code status caused him to be placed in a double-cell and that double-celling inmates violates the Eighth Amendment[7] prohibition against cruel and unusual punishment. The Eighth Amendment is "intended to protect and safeguard a prison inmate from an environment where degeneration is probable and self-improvement unlikely because of the conditions existing which inflict needless suffering, whether physical or mental." *Battle v. Anderson*, 564 F.2d 388, 393 (10th Cir. 1977) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976); *Gregg v. Georgia*, 428 U.S. 153 (1976)). Though there is "[n]o static 'test' . . . by which courts determine whether

---

[7] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

conditions of confinement are cruel and unusual," it is "measured by 'the evolving standards of decency that mark the progress of a maturing society.'" *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981)). Prison officials must ensure that inmates are not deprived of the "minimal civilized measure of life's necessities," including food, clothing, shelter, sanitation, medical care, and personal safety. *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1041 (Pa. Cmwlth. 2014) (quoting *Rhodes*, 452 U.S. at 346).

In order to succeed on an Eighth Amendment claim against a prison official, an inmate must show two requirements:

> First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks, footnote, and citations omitted); *see also Neely v. Dep't of Corr.*, 838 A.2d 16, 20 n.6 (Pa. Cmwlth. 2003).

This Court has determined that "[i]n the absence of substantial evidence in the record to indicate that the officials have exaggerated the response to these considerations, the Court should defer to [prison officials'] expert judgment in such matters." *Robson*, 420 A.2d at 12. Thus, "when a prison regulation impinges

on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Frankenberry's Complaint alleges that double-celling inmates in cells that are approximately 85 square feet for 17 hours a day is per se unconstitutional, citing *Tillery*. However, *Tillery* did not establish a per se rule, holding instead that a court must consider the totality of the circumstances in determining the constitutional adequacy of the housing. 907 F.2d at 427-28. In *Tillery,* the conditions of the prison included overcrowding, pervasive violence and insecurity, deficient medical and mental health care, subnormal ventilation, plumbing, showers, fire safety concerns, limited opportunities for out-of-cell recreation, long periods of double-celling, and inadequate screening before double-celling, which resulted in "fatal pairings" of inmates. *Id.* Accordingly, *Tillery* determined that "the constitutionality of double-celling must be analyzed in the context . . . that almost every element of the physical plant and provision of services [in this case] falls below constitutional norms." *Id*. at 427. Therefore, under the totality of the circumstances in *Tillery*, "double-celling violated the Eighth Amendment prohibition against cruel and unusual punishment." *Id.* at 428. However, other courts have found double-celling to be permissible, where "the general prison conditions [are] otherwise adequate." *Id.* at 427.

Frankenberry argues that double-celling, when considered in combination with the other conditions of confinement at SCI-Benner, deprives the inmates of the minimal civilized measure of life's necessities and violates the norms of decency, resulting in cruel and unusual punishment in violation of the Eighth Amendment. Taking Frankenberry's descriptions of conditions within SCI-Benner as true, the cells are approximately 85 square feet (42.5 square feet per man, per

11

cell) and inmates spend approximately 17 hours per day confined therein. Frankenberry has both a psychologist and psychiatrist who see him on a semi-monthly basis, in addition to a Unit Team that has knowledge of his behavior and sees him on a daily basis. The Court can infer based on the list of medications prescribed to Frankenberry and discussions of treatment for various health problems that he has regular access to a physician, and there are no allegations that other SCI-Benner inmates do not also. Frankenberry supplies no further allegations of the conditions within SCI-Benner in his Complaint.[8] Rather, he argues that there is physical and mental suffering inherent in two men confined in a small space for extended periods of time.

The conditions that Frankenberry describes in his Complaint fall short of the totality of the circumstances standard in *Tillery*. While we accept as true that inmates at SCI-Benner are confined to 85 square-foot double-cells for long periods of time, Frankenberry presents no evidence that the facilities are otherwise inadequate. There is no evidence that inmates at SCI-Benner are not provided with adequate medical and mental health care. There is no evidence that prison officials at SCI-Benner are not adequately screening for "fatal pairings" when double-celling inmates, especially as Frankenberry was "advised to find a cellie" of his choice to share with when he was notified that his "Z" Code status would be removed. (Complaint Exhibit A.) There is no evidence that conditions at SCI-Benner are not otherwise adequate and square footage alone is insufficient to constitute cruel and unusual punishment. Though Frankenberry avers that the length of time spent in his 85 square foot cell is what makes this cruel and unusual,

---

[8] Frankenberry raises additional adverse conditions in his brief on appeal, but as they were not pled in his Complaint, they will not be considered by this Court.

when viewed in the totality of the circumstances, this Court agrees with the trial court in finding that Frankenberry failed to state a claim regarding a violation of the Eighth Amendment.

C.    Discrimination and Equal Protection Claim

Though Frankenberry does not expressly raise his Equal Protection argument as an issue on appeal, he does mention discrimination in his brief, and accordingly this Court will briefly address this argument as it was contained in his Complaint and is addressed by Appellees in their brief to this Court.   In his Complaint, Frankenberry alleges that Appellees' decision to remove his "Z" Code status was discriminatory in violation of the Equal Protection Clause of the Fourteenth Amendment.[9]

> The Equal Protection Clause
>
> is not a command that all persons be treated alike but, rather, "a direction that all persons **similarly situated** should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 . . . (1985) (emphasis added).  The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification.  Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened scrutiny. *Id.*  Other classifications, however, need only be rationally related to a legitimate government goal. *See Chapman v. United States,* 500 U.S. 453, 465 . . . (1991) (applying rational basis test to classification based on nature of offense).

---

[9] "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

13

*Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996). "Neither prisoners nor indigents are suspect classes." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001). Additionally,

> no two prisoners, being different human beings, will possess identical backgrounds and characters. Indeed, it is difficult to believe that any two prisoners could ever be considered "similarly situated" for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics.

*Reider v. Com.. Bureau of Corr.*, 502 A.2d 272, 276 (Pa. Cmwlth. 1985) (quoting *Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D. Pa.), *aff'd*, 696 F.2d 985 (3d Cir. 1982)).

In his Complaint, Frankenberry states that his "Z" Code status was removed in order to grant "Z" Code status to trans-gender inmates, while he simultaneously argues that his "Z" Code status was arbitrarily and capriciously removed. Neither of these arguments is supported by facts, but taken as true, the arguments are contradictory. Even so, Frankenberry does not argue that he is similarly situated with trans-gender inmates and so, as prisoners are not a suspect class, any equal protection claim must be evaluated under a rational basis test. DOC's Policy requires that Appellees consider the unique characteristics of the inmate. Viewed in light of the discretionary authority granted to corrections officials, a rational basis existed to remove Frankenberry's "Z" Code status. Accordingly, Frankenberry fails to state a claim under the Equal Protection Clause of the Fourteenth Amendment.

14

D. Stay of Discovery

This Court finds no merit to Frankenberry's claim that the trial court's order staying discovery amounts to judicial error. Discovery matters are within a trial court's discretion and should only be overturned by a reviewing court if abuse of that discretion is evident. *Luckett v. Blaine*, 850 A.2d 811, 818 (Pa. Cmwlth. 2004). As a challenge to a discovery order constitutes a legal question, our scope of review is plenary. *In re Hasay*, 686 A.2d 809, 812 (Pa. 1996).

The trial court's decision to stay discovery was granted upon Appellees' motion for a protective order. The Pennsylvania Rules of Civil Procedure permit parties to file such a motion[10] and for the court to order a stay of proceedings until its disposition.[11] *Luckett*, 850 A.2d at 819. Indeed, the trial court "has the inherent power to schedule disposition of the cases on its docket to advance a fair and efficient adjudication. Incidental to this power is the power to stay proceedings,

---

[10] Rule 4012(a)(1) of the Pennsylvania Rules of Civil Procedure states:

(a) Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following:

(1) that the discovery or deposition shall be prohibited . . . .

Pa. R.C.P. No. 4012(a)(1).

[11] Rule 4013 of the Pennsylvania Rules of Civil Procedure provides:

The filing of a motion for a protective order shall not stay the deposition, production, entry on land or other discovery to which the motion is directed unless the court shall so order. The court for good cause shown may stay any or all proceedings in the action until disposition of the motion.

Pa. R.C.P. No. 4013.

15

including discovery. How this can best be done is a decision properly within the discretion of the trial courts." *Id.* (citation omitted). Thus, the court may grant a protective order and stay discovery upon good cause "for the convenience of parties . . . and in the interests of justice." Rule 4007.3 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 4007.3.[12]

Frankenberry argues that the trial court's decision to stay discovery denied him the opportunity to pursue and prosecute allegations that would be supported by evidence in the Appellees' records. While Pennsylvania allows discovery to aid in preparing pleadings,[13] this does not "authorize a 'fishing expedition' to determine whether a cause of action exists." *Luckett*, 850 A.2d at 818 (citation omitted). When a complaint has been filed, discovery may be granted provided that the plaintiff has presented a *prima facie* case therein. *Id.* (citing *McNeil v. Jordan*, 814 A.2d 234, 246 (Pa. Super. 2002)). As Frankenberry asserts that he cannot establish his case without the requested discovery, his right to discovery is defeated for

---

[12] This Rule states:

> Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery.

Pa. R.C.P. No 4007.3.

[13] Rule 4001(c) of the Pennsylvania Rules of Civil Procedure provides:

> Subject to the provisions of this chapter, any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery, or for preparation of pleadings, or for preparation or trial of a case, or for use at a hearing upon petition, motion or rule, or for any combination of the foregoing purposes.

Pa. R.C.P. No. 4001(c).

failing to set forth a *prima facie* case. Because Frankenberry did not present a *prima facie* case, the trial court's decision to grant the demurrer is wholly appropriate. Therefore, there was no abuse of discretion in the trial court's decision to grant a stay of discovery before ruling on the Appellees' POs.

## III. Conclusion

For the foregoing reasons, this Court hereby affirms the Order of the trial court granting Appellees' POs and dismissing Frankenberry's Complaint with prejudice against Tammy S. Ferguson, R. Rupert, and A. Nelson.[14]

_____
**RENÉE COHN JUBELIRER,** Judge

---

[14] As the trial court's ruling on the POs is affirmed, Frankenberry's Application for Relief transferred from the Superior Court to this Court for disposition is dismissed as moot.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph P. Frankenberry,      :
                Appellant        :
                                :
           v.                :    No. 105 C.D. 2017
                                :

Tammy S. Ferguson, Superintendent  :
at S.C.I. Benner, in her official as well  :
as her personal capacity; R. Rupert,  :
A-Block Unit Mngr at S.C.I. Benner,  :
in her official capacity; A. Nelson,  :
AB-Blocks Counselor, in her official  :
capacity and, Dr. Xue, Chief  :
Psychiatrist, CHCA at S.C.I. Benner,  :
in his official capacity            :

# O R D E R

NOW, July 12, 2017, the Order of the Court of Common Pleas of Centre County, in the above-captioned matter, is **AFFIRMED**. Joseph P. Frankenberry's Application for Relief is hereby **DISMISSED** as moot.

_____
**RENÉE COHN JUBELIRER,** Judge